## CITY OF OKLAHOMA CITY v. HOKE.

No. 9184—Opinion Filed July 29, 1919.

(Syllabus by the Court.)

**1. Crops—Joint Owners—Sufficiency of Evidence.**

The evidence examined and held insufficient to disclose that the witness Beeler had a joint interest in the crop destroyed or claimed a joint interest therein.

**2. Appeal and Error—Damages—Instructions —Harmless Error.**

In an action for damages to growing crops caused by the erection of a dam which caused the land to be flooded, where under the evidence the plaintiff was entitled to recover a sum equal to that awarded under any theory of the law, the judgment in his favor will not be reversed for an alleged error in defining the measure of damages.

**3. Municipal Corporations — Waterworks— Governmental Functions.**

A municipal corporation in operating a waterworks plant exercises business and administrative functions rather than those strictly governmental in their nature, and in the exercise of said functions are governed largely by the same rule applicable to individuals or private corporations engaged in the same business.

**4. Same—Nuisance — Abatement—Liability for Damages.**

Where a municipal corporation owns a municipal water plant, situated in the bend of the river outside of the city limits, and a drainage district is established, and a ditch constructed from one portion of the river to another, which would drain the water from the ordinary channel of the river where the waterworks plant is situated, and the drainage district builds a weir or dam to prevent the water from the main channel flowing down the drainage ditch, the effect of the dam being to hold sufficient water back in the channel of the river so the same may be utilized by the waterworks plant, and said dam or weir is washed away, having the effect of destroying the water supply for the municipal plant, the dam in its broken condition becomes a nuisance in so far as it pertains to the municipal waterworks plant, and the city may abate the nuisance on its own motion, doing no more than is necessary to protect its rights by re-establishing the dam in accordance with the plans of the drainage district, and to prevent the recurrence of the damage from the nuisance abated, but in abating the same and re-building the dam, if it damages or injures property of third persons, its liability will be determined on the same theory as if it were a private corporation.

**5. Damages—Interest.**

In an action for damages for the destruction of crops caused by the maintenance of a dam which caused the lands of another to be flooded, the jury in fixing the amount of damages fixed the value of the property at the time of the damages, and interest from said date. Held, not error.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by Charles E. Hoke against the city of Oklahoma City. Judgment for plaintiff, and defendant brings error. Affirmed.

B. D. Shear, A. T. Boys, and C. M. Thorp, for plaintiff in error.

Ernest Chambers, for defendant in error.

McNEILL, J. This action was instituted by the defendant in error in the district court of Oklahoma county to recover the sum of $600 as damages for the destruction of a corn crop by an overflow of the North Canadian river, which was occasioned by the alleged negligent and wrongful erection and maintenance by the plaintiff in error of a dam across a certain drainage ditch near the land.

The facts are that a drainage district was created southwest of Oklahoma City along the North Canadian river to straighten the river through several drainage ditches and to increase the flow through certain channels and thus prevent overflows during flood periods. One of these ditches was known as proposition No. 4, being built about one mile long across the neck in the bend of

the river, which bend was about five or six miles long. In the bend or loop of the river was situated the waterworks plant belonging to the city. This was used in connection with the sewer system, fire department and for domestic and manufacturing purposes by the inhabitants of the city. At the mouth of ditch No. 4, the plans of the drainage ditch called for a dam, which during ordinary times would force the flow of water in the stream down the old channel, thereby permitting it to be used by the city, and during the period of floods would permit the surplus water to flow over the dam and down the ditch. Soon after the dam was completed, it gave way, and practically all of the water of the river was drained from the ordinary channel down into this ditch and into the river below, leaving the city practically without any water.

Sometime after the dam was washed out, the city commissioners procured the right from the county commissioners to rebuild the dam and divert the water into the old channel for the purpose of protecting the water supply. This dam was built under the direction of the city officers having charge of the waterworks department, at the expense of the city, and it was the contention of the plaintiff that it was negligently and wrongfully erected, and being erected in the manner it was, it caused the overflow of the river on the lands of the plaintiff.

Judgment was rendered for the plaintiff for the sum of $367.50 with six per cent. interest from May 12, 1914, from which judgment the defendant brings this proceeding in error. The parties herein will be referred to as they appeared in the trial court.

The defendant urges numerous assignments of error for the reversal of this cause, which are combined under several general propositions.

The first proposition presented by the defendant in its brief is that the court erred in rendering judgment for plaintiff for the full amount of the crop. It alleges that the evidence disclosed that plaintiff was not the sole owner of the crop in question, but that one William T. Beeler had a joint interest in the crop destroyed. The defendant does not appear to have raised this question in the lower court, nor was it assigned as error in its motion for new trial, nor does the same appear to have been made an issue in the court below. The record disclosed that the plaintiff below produced William T. Beeler as a witness in the case, who testified as follows on direct examination: "Q. Now, did you cultivate that land that year for Mr. Hoke?

A. Yes, sir. Q. You were the actual farmer in charge? A. Yes, sir, Mr. Hoke helped me some."

And on cross-examination he testified as follows: "Q. What part of it was yours? A. Well, I got one-half, and Mr. Hoke was doing the renting and was paying cash rent and then he provided me everything and he gave one-half. Q. And you was to have one-half of the proceeds of the crop? A. Yes, sir."

The defendant cites the case of St. Louis & S. F. R. Co. v. Webb, 36 Okla. 235, 128 Pac. 252, but in that case the question arose over damages to a certain horse. The plaintiff alleged that he was the owner thereof, and the evidence disclosed one Merrill was a joint owner of the horse, and in that case defendant requested the court to instruct the jury that if Merrill was a joint owner of the horse the plaintiff could only recover for his interest in the horse. No such an instruction was requested in the court below, nor was any such a question presented in the motion for new trial, nor did the defendant request such an instruction. The first time the question appears to be presented is in this court. Beeler did not claim to be the joint owner in the property, but was to receive only one-half of the proceeds. If Beeler's evidence is true, and he appeared and testified in the case at bar, he could not maintain a separate and distinct action for his portion of the crop, for he testified that he was not the joint owner of the property, but he was to receive one-half of the proceeds of the crop. While it may be true that he might maintain an action against the plaintiff for one-half of what the plaintiff recovers in this case, yet that question is not involved here.

The court did not instruct the jury that the plaintiff was the owner of the crop, but Instruction No. 20 is: "If you should find for the plaintiff, your verdict should be in such sum as you find from the evidence will reasonably compensate him for the loss he has sustained." No such a question as presented here was presented in the motion for new trial in the court below.

For the reason stated, it was not error to render judgment for the full amount as found by the jury.

The defendant next complains of the instruction of the court to the jury as to the amount of damages. On this question, the plaintiff introduced evidence as to the value of the crop in question, basing it upon the value of so much per acre. The plaintiff then introduced the following evidence:

"Q. Referring now again to the corn crop, Mr. Hoke, do you know what would have been the expense incident to cultivating that crop out there to maturity and covering the marketing of it, beginning at the time it was destroyed, do you know? A. Yes, about $4.00 per acre."

This appears to be the only evidence, or is all that is called to the court's attention, that was introduced in the case upon this point. The evidence was broad enough to cover the proper measure of damages. The court instructed the jury in substance that they might, in ascertaining the amount of damages, take into consideration the kind and character of the crops destroyed, the time of their destruction, the yield that was reasonably certain said crops would produce, taking into consideration and deducting therefrom the cost of producing said yield, then measuring the value of the yield by the market price, at the time of such crops maturing. This instruction perhaps is broad enough to include the cost of harvesting and cultivation, but would not include the cost of marketing. The evidence on this question was what was the cost of cultivating, harvesting and marketing as one item, and there was no conflict whatever in the evidence as to such cost, and the only evidence included all of the items that make up the proper items of deduction. We cannot see that the rights of the defendant have been invaded by this instruction, since the evidence goes to show that if entitled to recover at all, plaintiff was under any theory of the law entitled to recover a sum equal to that which he was awarded by the jury in this case.

In the case of Ft. Smith & Western R. Co. v. Harman, 63 Oklahoma, 161 Pac. 1079, it was said:

"Where, in an action for damages for burning grass upon a hay meadow and for damage to grass roots, the plaintiff was entitled under the evidence to recover a sum equal to that awarded, under any theory of the law, the judgment in his favor will not be reversed for an alleged error in defining the measure of damages."

Under the evidence in this case the plaintiff was entitled to recover a sum equal to that awarded by the jury in its verdict and we cannot see that defendant has suffered prejudicial error by this instruction. Sec. 6005, Rev. Laws 1910.

The defendant presents as error in its next specification of error three propositions, First, did the situation surrounding proposition four, after the diversion weir was destroyed in May, 1913, constitute a public nuisance? Second, did the officers of the city of Oklahoma City have power to abate

the nuisance? Third, in abating said nuisance, in what capacity did the officers act? In their brief counsel present these three questions together.

The first question to be determined is, in the operating of the waterworks, is the city exercising governmental functions or is it exercising business and administrative functions? This question has been settled by this court in the case of city of Durant v. Allen, 67 Oklahoma, 168 Pac. 205, and Fretz v. Edmond, 65 Oklahoma, 168 Pac. 800, where the court stated as follows:

"Municipal corporations in operating a water plant exercise business and administrative functions rather than those strictly governmental in their nature, and in the exercise of said functions are governed largely by the same rule applicable to individuals or private corporations engaged in the same business."

With this proposition of law settled by our court, then the operating of the waterworks plant would be governed by practically the same rules and regulations as if it were a private corporation. Now plaintiff in error claims that when the diversion weir or dam broke, and thereby permitted the water to flow down through the drainage district and change the course to such an extent that it prevented the water from being accessible for the water plant and left the city without water, if it was a nuisance, it was not a nuisance within itself, but a nuisance in so far as the operating of the waterplant was concerned. If the plaintiff in error desired to abate the nuisance, and rebuild the dam, then it would be just in the same position and governed by the same rules and regulations as if it were a private corporation.

We have been furnished with no authority holding that a municipal health officer, or other city officer acting as such, may act outside the bounds of the city within the scope of his government duty. It is true the statutes of Oklahoma give municipalities the right to acquire and hold property outside of their corporate limits for certain purposes, one of which is to procure a water supply, another for sewerage purposes, and such statute gives the city officers police power and general municipal control over such property. However, these statutes do not confer the powers contended for by defendant, which would authorize the officers of such municipality to exercise governmental functions outside the corporate limits.

There was a nuisance admittedly existing, however, as to the city in that the destruc-

tion of the original dam interfered with its right as a lower riparian owner along the North Canadian river to take of the waters of such stream. The right to abate such nuisance either by action at law or summarily grew strictly out of the injury to and the invasion of its rights to take of the water of such river such an amount as was granted to it by the proper authorities of the state of Oklahoma. Joyce on the Law of Nuisances, page 532, par. 370, and cases there cited. In Woods on Nuisances (3rd Ed.) vol. 2, page 942, after stating the rule that a private person may not of his own motion abate a strictly public nuisance under any circumstances, it is stated:

"Any person who sustains a special injury or damage from a public nuisance to an extent that will support an action at law may abate the same of his own motion, doing no more damage than is necessary to protect his rights and prevent a recurrence of it from the nuisance abated."

A careful consideration of the evidence shows that the city in abating the nuisance was only exercising its legal rights and doing what it was authorized to do, both at common law and under the statutes of Oklahoma (Rev. Laws 1910, sec. 4261), and that, in so acting, it was protecting its property, the municipal waterworks plant, the maintenance of which does not come within the class of duties known as governmental duties, but rather private corporate functions, for the negligent exercise of which it will be responsible in damages. McQuillan on Mun. Corp. secs. 1801, 2625; City of Durant v. Allen, 67 Oklahoma, 168 Pac. 205; Fretz v. City of Edmond, 65 Oklahoma, 168 Pac. 800; Fisher v. Newbern, 140 N. C. 506, 5 L. R. A. (N. S.) 542; Bailey v. New York, 3 Hill. 531, 38 Am. Dec. 669.

The record clearly showing that the corporate officers were not exercising governmental functions when acting to abate the alleged nuisance, then the court correctly refused the requested instructions defining its rights under acts governmental in their nature. An examination of the instructions given shows that the court instructed the jury if they found there was a nuisance existing, the city would be liable only in the event that its officers failed to exercise ordinary and reasonable care in building the same, or, in other words, in building the dam. This was the correct rule to guide the jury in this case, and the instructions of the court correctly submitted this rule, and it was not error to refuse the instruction offered by defendant.

While it is well recognized that a municipal corporation is not liable for negligence in regard to governmental duties and is liable for negligence and damages resulting from the exercise of its private corporate powers, yet there is another well-settled rule that if a city, under its power to abate a nuisance, is proceeding against that which is in fact a nuisance, because of its situation, nature or use, it is then under the obligations to exercise the power of abatement in a reasonable manner so as to do the least injury to private rights, and if, where the fact of the nuisance is clear, it exercises the power of abatement in an unreasonable, careless, and negligent manner so as to produce unnecessary damage to private rights, it will be liable for damages caused by such negligence. Orlando v. Pragg, 31 Fla. 111.

In the case of City of Buffalo v. Babcock, 56 N. Y. Rep. 268, the Supreme Court of New York held:

"The power given a municipal body to abate a nuisance in any manner it may deem expedient, is not an unrestricted power; such means only are intended as are necessary for the public good. The abatement must be limited by its necessity, and no wanton or unnecessary injury to the property rights of individuals must be committed."

The facts in this case disclosed that a canal or slip had become a nuisance and unwholesome in the city of Buffalo by reason of debris and other matter being thrown therein. The canal at times was a valuable waterway, and the city ordered it filled to abate the nuisance thereby created. The court in granting an injunction against the city held that the nuisance could be prevented by the city in the exercise of its power so as to preserve the canal and slip, and the obstructions and debris in the canal could be removed at a small expense, there being no necessity for filling up the canal. See Allison v. City of Richmond, 51 Mo. App. 133; Dooley v. City of Kansas, 82 Mo. 444, 52 Am. Dec. 380; Joyce on Law of Nuisances, p. 376, and cases cited; Calef v. Thomas, 81 Ill. 478; Indianapolis v. Miller, 27 Ind. 394; Gates v. Blincoe (Ky.) 26 Am. Dec. 440, and note. Woods on Nuisances (3rd Ed.) vol. 2, sec. 741, says:

"A person who takes the abatement of a nuisance in his own hands, whether the same is public or private, must do as little damage as possible. * * *"

And further, at page 1282, same volume, it is said by the author:

"Any person injured by a nuisance, to the extent that he may maintain an action at law therefor, may remove so much of the nuisance as is necessary to secure himself from damage therefrom, but he must not be guilty of any excess therein, for as to all excess abatement, he will be a trespasser."

The defendant certainly cannot escape liability for its acts, when in the abatement of a nuisance it creates a condition which in effect is a nuisance as to the plaintiff. While it is true the defendant did not owe the drainage district as such any higher duty than to use reasonable care in the abatement of the nuisance, while by some courts the doctrine announced is, the fact of the nuisance being clear, the duty owed is not to wantonly or unnecessarily commit an injury upon the property of the person creating the nuisance, however, this rule does not relieve the abating party from the duty to exercise reasonable care to protect the property of third persons as in this case, and, if in the exercise of the power which the corporation has to abate the nuisance in question it does an act which results in damages to third persons, which in effect destroys the property of such person, it will be liable. To hold otherwise would be in effect to hold that private property can be taken without compensation by the municipal corporation, which certainly cannot be sustained, because the property of citizens is protected from the taking or trespass by the sovereign itself unless just compensation is made for the taking involved. Article 2, secs. 23 and 24, Const. of Oklahoma. See Oklahoma City v. Vetter, 72 Oklahoma, 179 Pac. 473; also Town of Southeast v. City of New York, 96 App. Div. N. Y. 598.

Plaintiff in error further contends that the judgment and verdict is not sustained by sufficient evidence. Plaintiff's crops were damaged by the flood of 1914. Most of the evidence introduced on behalf of plaintiff was presented with reference to the condition of the land as existing in 1916. Defendant urges that the crops were not destroyed by reason of the act of the defendant, for the reason the evidence shows that even if the earthen dam had been of an equal height and length as in the original drainage ditch or weir, the land of plaintiff would then have been overflowed. The evidence upon that point is at least conflicting, and the matter was properly submitted to the jury for its determination, and the jury after going and viewing the lands, and the whole situation, under the direction of the court, returned a verdict in plaintiff's favor. The evidence being conflicting, and there being evidence reasonably supporting the verdict of the jury, the same will not be disturbed by this court on appeal.

The verdict returned by the jury was for the sum of $367.50, with interest thereon from May 12, 1914, and the court on the verdict rendered judgment for the full amount with interest. This the defendant claims is error in permitting the interest to be added to the judgment.

The question of allowing interest upon damages is determined by section 2848 and section 2849, Rev. Laws 1910. Section 2848 is as follows:

"Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

Section 2849 provides as follows:

"In an action for the breach of an obligation not arising from contract, * * * interest may be given in the discretion of the jury."

These two sections of the statute are identical with the Dakota statute. The Supreme Court of South Dakota, in construing the identical statute in the case of Uhe v. Chicago, M. & St. Paul R. Co., 54 N. W. 601, stated as follows:

"The error in this instruction, if any at all, is in not leaving to the discretion of the jury the question of interest on the amount of damages. This is an action sounding in tort, and our Civil Code (section 4578) controls. It is as follows: 'In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given in the discretion of the jury.' Failure to leave this question to the jury, we think, was error."

The general rule of allowing interest is stated in the notes of 28 L. R. A. (N. S.), page 1, and on page 76 is announced the rule as follows:

"The general rule seems to be that interest should be allowed in actions for damages to property caused by water, sewage, or by diversion of water. This is under the rule that the value of the property destroyed is susceptible of computation. Some cases hold that it is discretionary with the jury."

In the following cases damages, with interest, were allowed from overflow of water in actions against a railroad, the overflow causing destruction of the crop: St. Louis, I. M. & S. R. Co. v. Yarborough (Ark.) 20 S. W. .515; Gulf, C. & S. F. R. Co. v. Calhoun (Tex. Civ. App.) 24 S. W. 362.

Counsel for defendant in error cite the case of City of Chickasha v. Hollingsworth, 56 Okla. 341, 155 Pac. 859, but this case is not in point, but is easily distinguishable from the facts in the case at bar.

There being no material error in the record, the judgment is affirmed.

OWEN, C. J., HARRISON, JOHNSON, and PITCHFORD, JJ., concur.