## OKLAHOMA TAX COMMISSION v. TEXAS CO.

No. 27202.　Feb. 15, 1938.

C. D. Cund, C. W. King, and A. L. Herr, for plaintiff in error.

J. H. Hill, John R. Ramsey, and Ames, Cochran, Monnet, Hayes & Ames, for defendant in error.

Ladner, Logsdon & Livingston, amici curiae.

HURST, J. Plaintiff, Texas Company, brought this action against defendant, Ok-

lahoma Tax Commission, to recover sales taxes with interest, which taxes had been paid under protest. Plaintiff set forth eight causes of action, same being numbered (a) to (h), inclusive. Prior to the trial, its cause of action numbered (a) was dismissed and is not now before us. Judgment was rendered for plaintiff on each of its causes of action, and the Tax Commission has appealed to this court.

No dispute exists as to the facts, and this court is presented only with the questions of law involved, which questions concern the proper construction of article 7, chap. 66, Sess. L. 1935, commonly known as the Sales Tax Act.

■ The first proposition to be considered is whether or not the gross proceeds from the sale of water is subject to the sales tax under the 1935 act, supra. It was stipulated that the Texas Company was engaged in developing properties for the production of oil and gas, and in connection therewith impounded surface waters upon its properties in Oklahoma. In May, 1935, the company received $293.27 from the sale of such water, upon which a sales tax of $2.93 was paid under protest. Plaintiff seeks recovery of said tax on the theory that (a) the sale of water is not a sale of goods, wares, or merchandise within the meaning of the act; and (b) the sale of water by plaintiff was not a transfer of tangible personal properties in the ordinary course of plaintiff's business.

In support of proposition (a), the Texas Company relies on the case of Wiseman v. Arkansas Utilities Co. (1935) 88 S. W. 2d 81, which held that artificial gas was not subject to the sales tax of Arkansas, since not included within the list of items of like nature, notwithstanding the general sections of the act providing that the tax applied to all retail sales of tangible personal property; and to the fact that in the original draft of the Oklahoma sales tax act, water was included, as a taxable item, but was stricken upon amendment and the bill passed as amended. We do not deem it necessary to pass upon these contentions, since we believe the sale of water by plaintiff, as contended in proposition (b), was not a transfer of tangible personal property in the ordinary course of plaintiff's business.

Section 3 of the act reads in part as follows:

"The term 'sale' or 'sales' shall mean any transaction by which is transferred for consideration the ownership of tangible personal property * * * when such transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption and/or use or for any other purpose than for resale."

Section 4, which levies the tax, reads in part:

"There is hereby levied a tax of one per centum upon the gross proceeds of all sales and/or purchases of all tangible personal property consisting of goods, wares or merchandise sold to or purchased by consumers and/or users within the state of Oklahoma. * * *"

Using the word "sale" in section 4, as defined in section 3, it is apparent that the tax, so far as pertinent here, applies to the transfer of ownership, for consideration, of goods, wares, or merchandise, in the ordinary course of the transferor's business.

This court held in the case of Muskogee Wholesale Grocery Co. v. Durant (1915) 49 Okla. 395, 153 P. 142, that the Bulk Sales Law, "affecting sales or transfers of a stock of goods, wares and merchandise or portions thereof, applies to those articles usually kept for sale in the ordinary course of business, and does not include fixtures". See, also, the cases of Texas Hide & Leather Co. v. Bonds (1932) 155 Okla. 3, 8 P. 2d 20, and Hood Rubber Products Co. v. Dickey (1934) 167 Okla. 304, 29 P. 2d 115, which extended the doctrine to machinery and tools used in the business.

We believe the rule above applicable here. Article 7, supra, seeks to tax, among other things not pertinent here, the sale of goods, wares, or merchandise usually kept for sale and sold in the ordinary course of the. transferor's business. This does not include water used in the conduct of the transferor's business, which he may sell occasionally, as was done in this case, and which is not the type of goods, wares, or merchandise usually kept for sale by him in the ordinary course of his business. It is stipulated that plaintiff is a corporation engaged in the business of producing, refining, manufacturing, and marketing oil and gas and other petroleum products. No contention is made that plaintiff is engaged in the business of selling water.

We therefore hold that the gross proceeds from the sale of water are not subject to the sales tax imposed by section 4, art. 7, supra, under the facts of this case.

■ The second and third propositions raise the question as to whether or not the gross proceeds of the sale of gas upon which the gross production tax has been paid are subject to the sales tax.

Subdivision b, section 4, of the act ex-

pressly subjects the gross proceeds of sales of "gas (natural or artificial) to consumers and/or users thereof" to the tax. It is contended, however, by the plaintiff that subdivision (f) of sec. 5 of the act exempts the sale of the gas in question here from the tax, since it provides:

"There are hereby specifically exempted from the tax imposed by this act, the following: * * * (f) The gross proceeds derived from the sale and/or purchase of any tangible personal property and/or service subject to any stamp, excise or any other kind of tax, imposed under and by virtue of article ten (10), section twelve (12) of the Constitution of the state of Oklahoma."

Article 10, section 12, Const., supra, includes, among others, "production" taxes.

That gas upon which the gross production tax has been paid falls squarely within the exempting clause above cited cannot be questioned. Defendant, however, contends that such a construction would render nugatory subdivision (b) of sec. 4, which specifically levies a sales tax upon the sales of gas (natural or artificial) to consumers or users thereof, and states that an act must be construed so as to give effect to all of its provisions.

We agree with the rule of construction contended for by the defendant, but do not agree that it is applicable in this instance. Under the construction we have given to the act, subdivision (b) of section 4 would be effective to subject sales of gas upon which no gross production tax has been paid, such as gas produced in other states and sold to consumers in this state, to the sales tax. Under the construction sought to be placed on the act by the defendant, subdivision (f) of sec. 5 would be rendered nugatory, and would thus violate the very rule of statutory construction urged by it.

We therefore hold that the gross proceeds of the sale of residue gas upon which the gross production tax has been paid are exempt from payment of the sales tax by virtue of subdivision (f) of section 5 of the the act.

■ The fourth proposition involves the question of whether or not a transaction whereby materials are furnished by a cotenant in the operation of a jointly owned oil and gas lease is subject to the payment of the sales tax where the said cotenant debited the others with their proportion of the cost of said materials.

Plaintiff contends that such a transaction is not a sale within the meaning of the act, and defendant, in its brief, concedes that such a transaction is not taxable. We agree with the contention made, and hold that materials furnished by a cotenant in the operation of a jointly owned oil and gas lease, wherein the other owners are charged with their proportion of the cost of such materials, is not a transaction to which the sales tax applies.

■ The fifth proposition arises from the removal of equipment by the Texas Company from the lease jointly owned and operated as set forth in the fourth proposition. Plaintiff retained the equipment and credited the co-owners with their proportion of the market value of the property so removed, which amounted to $752.83, upon which the sales tax was paid under protest.

We see no distinction in law between the transaction involved here and that considered in the fourth proposition. We, therefore, hold that where a joint owner of equipment used in the production of an oil and gas lease removes such property from the premises and retains same, crediting the other owners with their proportion of the market value of such property, such credit is not subject to the sales tax imposed by article 7, supra. Furthermore, such transaction would not be taxable for the reason given under proposition No. 1, supra.

■ The sixth proposition raises the question of whether the gross proceeds derived from the sale of material and equipment, which had been used by the Texas Company in its business, but which had become obsolete or nonusable before the same were entirely consumed, are subject to the sales tax under article 7, supra. Said material and equipment were sold to other persons for use or consumption.

Our answer to the first proposition is controlling here. It is not contended that the Texas Company is engaged in the business of selling secondhand material and equipment.

We therefore hold that the gross proceeds derived from the sale of material and equipment which had been used by the Texas Company in the conduct of its business, but which had become obsolete or nonusable before the same had been entirely consumed, and which were sold for use or consumption, are not subject to the sales tax under article 7, supra.

■ The seventh proposition involves the constitutionality of subdivision (j), section 4, article 7, supra, which reads as follows:

"A situs is hereby declared to exist for the purpose of this act and there is hereby

levied a tax of one (1%) per cent. on the fair market value of goods, wares and merchandise imported or brought into this state by any consumer on which the 'Oklahoma Consumers Tax' has not been paid; provided, said goods, wares and merchandise have terminated their movement into the state of Oklahoma and the original package in which they were imported has been broken and they have been within the confines of the state of Oklahoma for a period of more than twenty-four (24) hours prior to their consumption by the importer thereof."

Plaintiff admits that the tax, paid under protest, was proper, if subdivision (j) is constitutional. Said subdivision is assailed on several grounds, but we deem it necessary to consider only the question of whether that provision of the act is embraced in the title as required by section 57, article 5, of the Oklahoma Constitution.

The title to article 7, supra, so far as applicable here, reads as follows:

"An act levying a consumers' tax upon the gross receipts derived from the sales to consumers or users, of all tangible personal property, and of all goods, wares, merchandise, foods, confections, and drinks sold in the state of Oklahoma. * * *"

An analysis of subdivision (j) discloses that in substance a tax of one per cent. is levied on the fair market value of goods, wares, and merchandise imported or brought into the state of Oklahoma by any consumer, which have acquired a taxable situs in this state in the manner set forth in subdivision (j), if the "Oklahoma Consumers Tax" has not been paid on such goods, wares, and merchandise.

Defendant contends that the above provision deals with a consumption tax and is therefore referable and cognate to the title of the act, since the title also relates to a consumption tax. We cannot assent to this contention. Even assuming, without deciding, that subdivision (j) levies a "consumption tax," said tax is levied on the "fair market value" of goods, wares, and merchandise, brought into the state of Oklahoma, while the title states that it is "an act levying a consumer's tax upon gross receipts derived from the sales to consumers or users, * * * of all goods, wares, merchandise * * * sold in the state of Oklahoma." The difference in the two provisions is readily apparent. The defendant does not contend that any other provision of the title would cover subdivision (j).

The cases cited by defendant hold that the title may be expressed in general terms and that it is not necessary for the title of an act to embrace an abstract of its contents, and that the requirements of section 57 of art. 5 of the Constitution should not be enforced in such a manner as to cripple legislation. These rules are inapplicable here.

The title to the act does contain an abstract of its contents, and is not in general terms. The subject expressed in the title fixes a limit upon the scope of the act. Traders Compress Co. v. Precure (1924) 107 Okla. 191, 231 P. 516. As stated in 59 C. J. 812, "all parts of an act which are not within its title are unconstitutional and void, even though such provisions might properly have been included in the act under a broader title."

The error in the title probably occurred during the passage of the bill. The journal of the Fifteenth Legislature discloses that the bill as originally introduced did not contain subdivision (j), but it was later added by the conference in lieu of a Senate amendment. The bill passed as amended, but the title as it originally passed the House remained unchanged.

We conclude that the tax levied by subdivision (j) of the act is not within the scope of the title of the act, and is therefore unconstitutional and void.

Judgment affirmed.

RILEY, PHELPS, GIBSON, and DAVISON, JJ. concur. OSBORN, C. J., and BAYLESS, V. C. J., dissent as to paragraph 6 of the syllabus. WELCH and CORN, JJ., dissent.