**OKLAHOMA CITY, a municipal corporation, Plaintiff in Error,**

v.

**Josie PRIETO, Defendant in Error.**

**No. 42748.**

Supreme Court of Oklahoma.

Feb. 2, 1971.

As Corrected March 1, 1971.

Rehearing Denied April 6, 1971.

Roy H. Semtner, Municipal Counselor, Tom B. McGee, Asst. Municipal Counselor, Oklahoma City, for plaintiff in error.

Carl W. Davis, Oklahoma City, for defendant in error.

DAVISON, Vice Chief Justice.

The City of Oklahoma City (defendant below) appeals from a judgment rendered on a jury verdict in favor of Josie Prieto (plaintiff below) for injuries suffered by her when she fell into an open sewer manhole located in a city alley. We will refer to the parties by their trial court designation.

Defendant City complains that the trial court erred in overruling its demurrer to plaintiff's evidence, and in denying defendant's request for a directed verdict in its favor. This proposition is based on defendant's claim, (1) that plaintiff's evi-

dence did not show defendant was negligent, and (2) that plaintiff could not maintain the suit because she failed to give defendant the notice specified in 11 O.S. Supp.1965, § 1756, of the Governmental Tort Liability Act.

The evidence reflects that plaintiff and her 7 year old son occupied a small house on the rear of a lot located adjacent, or in close proximity, to the alley. On the morning of November 30, 1965, at about 5:30 A.M., while it was still dark, plaintiff and her son, as was their usual custom, started walking south down the alley for the purpose of leaving the boy with a baby-sitter. While walking down the alley plaintiff fell into an open manhole, which was full of blackish liquid. A short time later, when it was daylight, she returned to the area and saw the manhole lid lying about two or three feet from the manhole.

Plaintiff's landlady testified that she learned of plaintiff's accident when plaintiff returned to her home to clean up, that she (landlady) informed the City by telephone of the open manhole, and then walked down the alley and saw the open manhole, filled with liquid and the cover lying two or three feet to the west. The defendant City cleared the sewer and replaced the cover on the manhole that morning. The landlady also testified that the morning of the previous day (November 29, 1965) at about 8:35 A.M. she saw a blue City truck with a City sign on its side at the manhole, that the cover was off and a crew of men with a cable "down in the manhole working on it because they had a lot of trouble with the sewer running over."

The defendant introduced testimony to show that its records did not reflect that a City sewer maintenance truck was dispatched to the location of the manhole on the date prior to the day of plaintiff's injuries. This witness did admit that it was possible that some mistakes had been made in the keeping of these records. Defendant also introduced the testimony of persons who frequented the area that they did not see the cover off of the manhole during the day prior to the date of plaintiff's injuries. Defendant's Superintendent of Sewer Division testified that the lid involved in the case was an old style cover and weighed between 100 and 115 pounds; that it was hard to take off; and that a special pick with a curved tip was inserted in a hole in the cover to lift off the cover.

Defendant contends that plaintiff's claim that defendant's employees left the cover off of the manhole is supported by evidence that amounts only to a conjecture, or an inference based upon an inference.

It is well established that a municipal corporation has a primary duty of keeping and maintaining its streets, sidewalks, and public ways, in a reasonably safe condition for the traveling public, and that its liability for personal injuries by reason of defects and obstructions therein is founded solely on negligence. Lane v. City of Tulsa, Okl., 402 P.2d 908.

It is also well established that the question of whether a municipality exercised ordinary care and diligence in keeping its streets, sidewalks, and public ways in a reasonably safe condition is a question of fact to be determined by a jury. Lane v. City of Tulsa, supra.

Defendant argues in effect that plaintiff's evidence, that the manhole cover was off the morning of the day before plaintiff was injured, while defendant's employees were working at the location, was too remote from the time of injury to constitute proof that the manhole was left uncovered.

It appears to be the general rule that for the purpose of proving or disproving a defect or obstruction at the time of the accident, evidence is admissible which tends to show its existence or nonexistence within a reasonable time prior thereto, where the evidence is such, in character and time, as to justify the inference that the conditions were the same at the time of the accident. 63 C.J.S. Municipal Corporations § 939c(2), p. 431. City of Phoenix v. Boggs, 1 Ariz.App. 370, 403 P.2d 305.

■ We have held that the question of whether evidence is so remote in terms of time or place as to be entirely lacking in probative force must be controlled by the usual state or nature of things sought to be proved thereby or deduced therefrom and by the particular circumstances of the case. The trial judge is clothed with wide discretion in determining such question. Ordinarily remoteness affects only the weight of the evidence rather than its admissibility or sufficiency to support a verdict. Smittle v. Illingsworth, Okl., 373 P.2d 78.

■ In the present case the evidence supporting plaintiff's action was that the defendant's employees had removed the manhole lid; that the lid was heavy and hard to remove; and that a special pick was used to remove the lid from its recessed position over the manhole. In such a situation and in view of the above authorities we fail to see how the evidence lacks any probative force to support the inference that the manhole remained open.

■ In Highway Construction Co. v. Shue, 173 Okl. 456, 49 P.2d 203, we said that one reasonable inference resulting from a proven fact or facts may be treated as evidence in itself. And in Rogers v. Cato Oil & Grease Co., Okl., 396 P.2d 1000, we defined "inference" as a deduction which is permissible under the evidence. We believe it was a reasonable inference from all of the evidence favorable to plaintiff, if the jury chose to believe it, that the manhole remained open from the time defendant's employees removed the cover until plaintiff's fall the next morning.

■ In passing upon an alleged error in overruling defendant's demurrer to plaintiff's evidence and request for directed verdict, the evidence will be construed in the light most favorable to plaintiff, and where there is any evidence or reasonable inference from the circumstances reasonably tending to establish a cause of action or to sustain a jury's verdict and a judgment based thereon, such judgment will be sustained on appeal unless shown to be contrary to law. Safeway Stores, Incorporated, v. Keef, Okl., 416 P.2d 892.

■ Defendant cites and relies on the case of Morrow v. City of Harlan, Ky., 344 S.W.2d 401, where plaintiff was injured when he stepped on a sewer manhole cover in the sidewalk at a street corner curb and it "rolled or tilted" causing him to drop into the hole. Some city workmen had been cleaning out the manhole about thirty hours before the accident. The trial court directed a verdict for the city on the ground that plaintiff did not prove the city was negligent and because it believed the plaintiff was contributorily negligent. The appellate court affirmed, concluding as a matter of law, that the intervening thirty hours was too long to permit a reasonable inference that the city workmen did not replace the cover in a safe condition, and that there was too great an opportunity for a third party's independent and intervening culpable act "for the law to pin liability on" the city. We decline to follow the cited case for the reasons above set forth. In Oklahoma, supra, the question of whether a municipality exercised ordinary care and diligence in keeping streets and public ways in a reasonably safe condition is a question of fact to be determined by a jury. Also, in this jurisdiction contributory negligence is a question for the jury to determine.

■ Defendant also cites Pasadena Research Laboratories v. United States, 9 Cir., 1948, 169 F.2d 375, for the proposition that there was a presumption that the city employees in the present case put the cover back on the manhole when they finished their work. We may concede that such presumption is applicable, still, it is subject to being overturned. As stated in the cited case, it is presumed that "all things are rightly done, unless the circumstances of the case overturn this presumption, * * *." The jury's verdict was in effect a finding that the defendant was negligent. We will not set aside the jury's verdict on this ground alone.

It is our conclusion that there was sufficient evidence and reasonable inferences to be drawn therefrom to justify the trial court submitting the question of defendant's negligence to the jury.

Defendant further contends that the trial court erred in overruling its plea in abatement because the plaintiff failed to give the defendant the written notice of her claim for damages specified in 11 O.S. Supp.1965, § 1756, of the Governmental Tort Liability Act.

There is no dispute that plaintiff did not give written notice of her claim for damages to defendant.

Plaintiff contends that any provisions in the 1965 Act capable of being construed to extend its terms to municipal liability arising out of negligence in performing proprietary functions are unconstitutional. This contention is based on the proposition that the provisions of the 1965 Act relative to proprietary functions are not within the subject of the title to the Act and are therefore void.

The title to the Governmental Tort Act provides in pertinent part as follows:

"*An Act relating to tort liability;* making municipal corporations with a population of over two hundred thousand liable for damages to property and injury to persons caused by negligence of their agents or employees *when engaged in a governmental function;* defining terms; limiting such liability; allowing liability payment of moral obligations *arising from or during performance of a governmental function;*" (emphasis supplied)

The Act, 11 O.S.Supp.1965, §§ 1751–1766, defines "Governmental Function" in § 1752, as follows:

"All functions of State Government and all functions of municipalities which are imposed by law, or tend to promote or serve the general health, safety and welfare of the public."

and defines "Proprietary Function" in § 1752, as follows:

"All functions of municipalities that are not governmental functions."

Section 1753 provides as follows:

"LIABILITY FOR TORTS.—Subject to the limitations of this Act, every municipality is subject to liability for its torts and the torts of their officers, employees and agents acting within the scope of their employment or duties arising out of a governmental function."

The term "Proprietary Functions" does not appear at any other place in the 1965 Act. All other parts of the 1965 Act refer to "governmental function" and "governmental immunity."

Section 1756 of the Act provides in part that persons claiming damages from any municipality for loss or injury within the scope of the Act shall give written notice to the municipality within thirty days as to the time, place, and circumstances, and the amount of compensation or other relief demanded. It provides that "No action for any cause arising under this Act shall be maintained, unless such valid notice has been given and unless the action is commenced within six (6) months after such notice."

As a matter of historical note, the Legislature in 1968 (11 O.S.Supp.1968, § 1753) amended § 1753 of the 1965 Act to eliminate the words "or proprietary," and added the following provisions:

"The provisions hereof shall not be construed to extend or restrict claims arising out of proprietary functions of municipalities."

We are concerned with the provisions of the 1965 Act.

There is no question that we are confronted here with the question of defendant's liability for negligence arising out of its performance of a proprietary function. Plaintiff's petition presented the issue of defendant's failure to keep the alley in a reasonably safe condition and the jury was instructed on this issue. In Lane v. City of Tulsa, supra, we held that the maintenance of streets, sidewalks, and public

924 ■ ▬▬▬▬▬▬▬

ways, by a city is the exercise of a proprietary function.

Article 5, § 57, of the Oklahoma Constitution provides in part that "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, * * *."

■ In Excise Board of Washita County v. Lowden, 189 Okl. 286, 116 P.2d 700, we said that the title to an act of the Legislature must be construed with reference to the language used in it alone and not in the light of what the body of the act contains. See also Poafpybitty v. Skelly Oil Company, Okl., 394 P.2d 515.

■ The subject expressed in the title to an act fixes a limit upon the scope of the act, and all parts of an act which are not within its title are unconstitutional and void, even though such provisions might properly have been included in the act under a broader title. Oklahoma Tax Commission v. Texas Co., 182 Okl. 91, 76 P.2d 389. See also Poafpybitty, supra.

The subject clearly expressed in the title to the Act is limited to tort liability caused by negligence "when engaged in a governmental function," and, in the case of moral obligations, those "arising from or during performance of a governmental function." The introductory portion of the title does state that it is an Act "relating to tort liability," but the later provisions restrict its application to "governmental functions."

Defendant cites Lowden v. Luther, 190 Okl. 31, 120 P.2d 359, and other cases holding that the title to a legislative act may be general. It is defendant's position that, under these cases, the first clause in the instant title stating it was "An Act relating to tort liability" was sufficient to encompass the proprietary function provisions of the statute. We have examined these cases and in none of them do we find a situation where later clauses in the title restrict or limit the preceding general portion of the title. They are not applicable to the present situation.

■ It is our conclusion that those portions of the Governmental Tort Liability Act purporting to extend its terms to municipal liability arising from proprietary functions are not within the title to the Act, and are unconstitutional and void.

Affirmed.

All Justices concur.