The City of OKLAHOMA CITY, a municipal corporation, Plaintiff in Error,

v.

Vera C. MOORE, Defendant in Error.

No. 43435.

Supreme Court of Oklahoma.

Nov. 23, 1971.

**274**

Roy H. Semtner, Municipal Counselor, Walter M. Powell, Asst. Municipal Counselor, for plaintiff in error.

Rinehart, Morrison, Cooper & Stewart, Oklahoma City, for defendant in error.

HODGES, Justice.

Plaintiff recovered a judgment upon a jury verdict against the City of Oklahoma City for personal injuries received in a fall when the water meter lid she stepped on gave way causing her to fall into the water meter box. The defendant Oklahoma City appeals.

Plaintiff, a welfare department worker, was calling upon a client in Oklahoma City on Tuesday, August 23, 1966, at approximately 7:45 A.M. She parked her car in a parking lot across the street from where the client lived, crossed the street and started across the parking between the curb and the sidewalk when she stepped on a water meter lid and fell into the meter box causing her permanent personal injuries. Plaintiff filed suit against the City of Oklahoma City without first making a claim against the City through the City Council.

Defendant raises the following issues for reversal of the judgment of the trial court: The Governmental Tort Liability Act of 1965, 11 O.S.Supp., 1965, Section 1751 et seq. bars or limits the recovery of the plaintiff; trial court refused to submit defendant's theory of defense to jury in that property where accident occurred was private property and plaintiff failed to prove the element of hidden danger involved; plaintiff relied on a presumption which runs backward in time which is error; plaintiff bases an action in negligence on an infer-

ence of negligence predicated on an inference which is error; and plaintiff failed to overcome the presumption that the city water meter reader properly performed his duty.

The evidence showed that the water meter was installed and maintained by the defendant. That on Monday, August 22, 1966, the day before the accident occurred an employee of the defendant read the water meter at approximately 9 A.M. To read the meter which is located beneath the ground in a box, it is necessary to remove the lid by a special key which unlocks and allows removal of the approximately 18 pound iron metal lid.

The testimony also revealed that city water meter readers are not the only persons who have access to the type of keys which unlock the lid. License Plumbers usually carry a key which will allow unlocking and lifting of the meter lids, and any individual may purchase one from a hardware store. It was shown that a common coat hanger may be used if bent properly to unlock and remove the water meter lids.

The evidence further showed that if the meter lid is properly secured it will not only sustain the weight of an adult but will also hold the weight of a car. The water meter in question is located between the curb and the sidewalk and is in close proximity to both.

In their first proposition City contends that plaintiff's cause of action, if any, is governed by the Governmental Tort Liability Act of 1965, before its amendment in 1968. The Act provides for a limited tort liability of cities with a population in excess of two hundred thousand. They argue the Act bars or limits the recovery of the plaintiff in the following aspects: (1) the Act covers all tortious acts committed by municipalities or their employees regardless of whether the function is governmental or proprietary; (2) that plaintiff failed to give the City written notice of her claim within thirty days after being injured as required by the Act; (3) the Act changes and replaces the common law definition of "governmental function" in regard to water systems so that plaintiff's cause of action, if any, arose out of a governmental function.

In a recent opinion in Oklahoma City v. Prieto, Okl., 482 P.2d 919 (1971), we held the Act is limited to tort liability caused by negligence "when engaged in a governmental function", and that those portions of the Act purporting to extend it to municipal liability arising from proprietary functions are not within the title to the Act, and are unconstitutional and void. A later amendment to the Act in 11 O.S.Supp. 1968, 1753, while not controlling in the present case as plaintiff's cause of action arose prior thereto, did follow the conclusion reached in the Prieto case and specifically limited the provisions of the Act to tort liability of municipalities arising out of a governmental function, with a further proviso that the intent of the Act was not to extend or restrict claims arising out of proprietary functions of municipalities. Even before the amendment, it clearly appears that the legislature intended to enlarge the area of tort liability rather than restrict it. The Act provides for suit against a municipality in the additional area of a governmental function, with certain exemptions and limits, which heretofore did not exist.

City also argues, alternatively, that if the Act is only applicable to "governmental functions" then the function the City was engaging in when plaintiff was injured was a governmental function under the provisions of the Act defining "governmental function", 11 O.S.Supp. 1965, 1752. This section defined "governmental function" as:

"All functions of State Government and all functions of municipalities which are imposed by law, or tend to promote or serve the general health, safety and welfare of the public."

and defined proprietary function as:

"All functions of municipalities that are not governmental functions."

There is no question that prior to the adoption of the Governmental Tort Liability Act that a claim arising out of a negligent act committed by a City in the operation of its waterworks, as in the present case, was considered a proprietary function and in the exercise of such function the City is governed largely by the same rules as are applicable to private corporations. Cox v. City of Cushing, Okl., 309 P.2d 1079 (1957); City of Oklahoma City v. Hoke, 75 Okl. 211, 182 P. 692 (1919); Town of Hallett v. Stephens, 125 Okl. 157, 256 P. 921 (1927).

City argues, however, that those cases predated the Act in question and are not in point since the legislature had not previously acted to define governmental and proprietary functions. They argue that now since the legislature has defined the terms that our court is governed by their definition, and that under the legislative definition the operation of a waterworks by a City is a governmental function on which plaintiff's cause of action must be predicated.

We do not believe it was the intent of the legislature to change or replace the standards or tests heretofore made by case law and judicial decisions in determining the distinctions between governmental and proprietary functions. As mentioned before, the intent of the legislature in enacting the Tort Liability Act was to expand the responsibility of cities over 200,000 for tort liability in governmental functions. The purpose of the Act was not to limit or restrict tort liability of cities in proprietary functions. Under plaintiff's theory almost all activities could be classed as governmental, which would be an important departure from our existing law. Assuming arguendo, the power of the legislature to change the standards or tests governing what is a governmental or proprietary function, we do not believe the legislature would enact such vital legislation without specifically expressing or declaring such an intent. Since statehood the legislature has recognized that a city has two classes of power, governmental and proprietary, and

that our courts have established specific standards in determining the distinctions between the two functions. To overturn these well established and well settled court-made standards would, in our opinion, require a clear expression of intent by the legislature which we do not find in the Tort Liability Act.

We find the broad definition of "Governmental function" as contained in the Act is subject to the same judicial interpretation that existed prior to its enactment.

In the City's second proposition they contend that since plaintiff did not allege or prove the water meter was located on public property, then the rule of law regarding injuries on private property would apply. The City points out that this rule requires the plaintiff to prove the defect (insecurely placed water meter cover) was not open and obvious but was in the nature of a hidden danger, such that there arose a duty on the part of the City to warn the plaintiff of the defect. City complains that the trial court erred in failing to instruct the jury as to the duty which is owed an invitee by a private property owner, and further that plaintiff's evidence failed to establish the water meter lid was hidden so that she would not have seen it had she been using reasonable care.

Plaintiff's only allegation of negligence against the City was that the water meter cover had been improperly placed on the opening by one of the employees of the City. This allegation of negligence pertains to the City's own negligence, so that notice, actual or constructive, to the City of a defective water meter cover was not a requirement of plaintiff to allege or prove before establishing liability against the City. The duty of the City to securely affix the water meter cover in a reasonable safe condition is absolute. Plaintiff's evidence shows that an employee of the City read the water meter the day prior to plaintiff's accident; that the water meter lids are locked in place which requires a key to open; that when a water meter lid is properly placed and secured it is safe for a person

to walk on and will even hold the weight of an automobile; and that the water meter lid was not securely placed but was "ajar", which was described and demonstrated to the jury by witnesses. Upon this evidence the trial court instructed the jury the City has a duty to securely place and lock a water meter cover and that plaintiff had a duty to exercise ordinary care and caution for her own safety. The court specifically instructed the jury that if they found "from the evidence that the appearance and condition of meter cover at the time and place in question was such that plaintiff, by the exercise of ordinary care, and the use of her physical senses, could have discovered the condition of the same and have avoided injury to herself by not stepping on same", then their verdict should be for the defendant City. So even assuming plaintiff had to show the defect was hidden, we find the above instructions sufficiently apprise the jury of the issue and that there was sufficient evidence upon which the jury could find for the plaintiff.

Defendant City contends in their last proposition that even though the water meter lid was insecurely fastened at 7:45 A.M. on Tuesday August 23, 1966, this does not give rise to the presumption that it was insecurely fastened at 9 A.M. on Monday August 22, 1966, when the meter reader removed the lid and replaced it. They invite our attention to the general rule that proof of a fact of present condition does not raise any presumption that the same condition or facts existed at a prior date. Champlin Refining Co., et al v. Smith, 190 Okl. 287, 123 P.2d 253 (1942). In the Champlin case this court, in approving the general rule, stated it would apply where the evidence showed the defendant had in no way contributed to the condition of the cause of injury at the time or before the injury occurred. In the instant case however, the evidence showed the water meter reader contributed to the condition which caused the injury as he had read the meter the day before the accident occurred, and to read the meter it was necessary for

him to remove the lid. In a similar case where a city employee removed a manhole lid the day before the accident occurred, we held the question of whether evidence is entirely lacking in probative force because of its remoteness in terms of time or place must be controlled by the usual nature and state of things sought to be proved or inferred therefrom and by the particular circumstances in the case, and the trial judge is clothed with wide discretion in determining such question. Oklahoma City v. Prieto, supra. We have further held that ordinary remoteness affects only the weight of the evidence rather than its admissability or sufficiency to support a verdict. Smittle v. Illingsworth, Okl., 373 P.2d 78 (1962).

Defendant maintains in the law of evidence it is permissible to draw an inference from facts proved but not permissible to draw an inference based upon another inference. With this proposition we agree, but distinguish its application in the present case. The defendant states the two inferences which must be relied upon for the plaintiff to prove negligence are: (1) if the meter lid was loose on Tuesday, then it was presumably left loose on Monday, and (2) if the meter lid was loose on Monday, then it was presumably left loose by the city meter reader. The defendant composes two inferences when in fact only one exist. The evidence shows the city meter reader read the meter the day before the accident occurred; the meter lid would support the weight of an adult person or even an automobile if it had been properly secured; the plaintiff fell through the meter lid the day after the meter reader read the meter; and the meter reader was the last one to have contact with the meter before the accident. The only inference to be drawn is since the meter reader was the last one to have contact with the meter lid and the plaintiff could not have fallen through the lid if it had properly been secured then did the meter reader improperly secure the meter lid? The jury answered the question in the affirmative with its general verdict for the plaintiff.

The jury in its verdict also answered defendant's other contention which is related to the foregoing, where they claim plaintiff's evidence failed to overcome the presumption that the city employee properly performed his duties. The question of the negligence of the city and the contributory negligence of the plaintiff are questions for the jury to determine. Oklahoma City v. Prieto, supra. The jury has resolved the question of inferences and presumptions and the evidence as herein detailed amply supports their verdict.

Affirmed.

BERRY, C. J., DAVISON, V. C. J., and JACKSON, IRWIN, LAVENDER and McINERNEY, JJ., concur.