WATERFORD ENERGY, INC., Appellant,

v.

OKLAHOMA TAX COMMISSION, Appellee.

No. 77168.

Court of Appeals of Oklahoma, Division No. 1.

March 31, 1992.

Rehearing Denied May 26, 1992.

Certiorari Denied Jan. 12, 1993.

James M. Peters and Steven K. McKinney, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellant.

David Hudson and Kathryn Bass, Oklahoma Tax Com'n, Oklahoma City, for appellee.

## MEMORANDUM OPINION

ADAMS, Judge:

Waterford Energy appeals an order of the Oklahoma Tax Commission (the Commission) denying its protest of sales taxes assessed.[1] Two types of transactions are involved. In the first, Waterford transferred its rights in a gas-gathering pipeline as part of a larger transaction involving the sale of oil and gas wells, rights of way and easements, equipment, and machinery. Over Waterford's protest, the Commission assessed sales tax on the sale of the pipeline.

---

1. Waterford also claimed error regarding use taxes in its petition in error, but did not address this issue in its brief by argument or citation to authority. Accordingly, we treat the use tax issue as abandoned and do not address it. *Erwin v. Harris,* 371 P.2d 902 (Okl.1962).

In the second type of transaction, Waterford, as operator of several oil and gas wells in which it owned an interest, transferred equipment and material from a well site to Waterford's yard or to another well site which Waterford operated. The Commission treated these material transfers as sales and assessed sales tax. Although we agree the Commission properly assessed sales tax for the sale of the pipeline, the Commission's order assessing sales tax against Waterford for the material transfers was unauthorized by law and must be reversed.

*Pipeline Sale*

The Commission argues tax was properly imposed on the sale of the gas gathering pipeline because the pipeline was tangible personal property. Waterford claims the pipeline was a buried fixture appurtenant to the realty as described in 60 O.S.1981 § 7, and was therefore exempt from sales tax.

■ Whether a structure has become a fixture and therefore part of the realty or is chattel subject to sales tax is determined by a three part test:

1. The actual or constructive annexation of the item to realty or to something appurtenent [sic] to realty;

2. The appropriateness of the particular article's use to the purpose or actual use of the realty;

3. The intention of the party placing the article on the realty to make the article a permanent and integral part of that realty.

*In re K & A Servicing, Inc.*, 47 B.R. 807 (Bankr.N.D.Texas 1985) (applying Oklahoma law); *Accord, United Benefit Life Ins. Co. v. Norman Lumber Co.*, 484 P.2d 527 (Okla.1971); *Hartford Fire Ins. Co. v. Balch*, 350 P.2d 514 (Okla.1960).

■ Waterford satisfied the first part of this test by demonstrating the pipeline was annexed to the right of way, which was an interest in realty. Waterford did not satisfy the second part of the test because, as in *Cherokee Pipe Line Co. v. Newman*, 593 P.2d 90 (Okla.1979), the pipeline benefited the company owning the right of way, not

the surface owner. The pipeline was appropriate to the use of the right of way and enhanced its value, but was not connected with the general use of the surface as farmland. However, the intent of the party affixing the item to the land is the controlling consideration and chief test. *Kay County Gas Co. v. Bryant*, 135 Okl. 135, 276 P. 218 (1928).

■ In most cases, the lessee's right to remove fixtures tends to negative the test's third part. However, trade fixtures, if left attached to realty and abandoned by a lessee, may be part of the realty of a lessor. *Gutierrez v. Davis*, 618 F.2d 700 (10th Cir.1980). But *Gutierrez* is distinguishable because abandonment is not presented on this record. No presumption of intent to make an item affixed to realty a permanent addition is created when the one making the addition had an estate limited in time or use. *In re K & A Servicing, Inc.*, 47 B.R. at 812. Further, trade fixtures, as a class, though affixed to the realty, may be removed within a reasonable time by a lessee. *Luttrell v. Parker Drilling Company*, 341 P.2d 244 (Okla.1959). In the absence of facts or circumstances to the contrary, it is assumed trade fixtures may be removed even without an express agreement. *Kay County Gas Co. v. Bryant*, 276 P. at 222.

■ The pipeline, a trade fixture capable of removal, was tangible personal property placed upon real estate and remained personal property. *Magnolia Petroleum Company v. Oklahoma Tax Commission*, 326 P.2d 821 (Okla.1958). This conclusion is consistent with the treatment of pipelines for ad valorem taxation. For over fifty years, "[a]ll oil, gas, water or other pipe lines" have been defined as personal property for purposes of ad valorem taxation. See Title 68, Laws 1941, p. 311, § 4 (Twelfth) (b), (now at 68 O.S.1981 § 2420, referring to "pipelines"). Nothing in this record distinguishes this pipeline from the type defined as personal property for ad valorem purposes, and Waterford did not satisfy, as a matter of law, all of the criteria for determining property to be a fixture

rather than personal property. The record supports the Commission's finding that the pipeline was tangible personal property subject to sales taxation, and that determination is affirmed.

### Material Transfers

Waterford claims the Commission erroneously assessed sales tax for certain material transfers occurring between March, 1984 and December, 1988. As operator, Waterford transferred materials from some well sites in which Waterford owned an interest to one of its yards, and from some well sites to other well sites operated by Waterford in which Waterford also owned an interest. When material was removed from a site, Waterford credited the joint owners with a proportionate share of the material's value.

The record reflects taxes assessed against Waterford were attributable to the joint owner's proportion of the materials transferred to Waterford. The Commission treated the proportion attributable to the joint owners as a sale to Waterford. Waterford claims the transactions are not subject to sales tax, citing *Oklahoma Tax Commission v. Texas Co.*, 182 Okl. 91, 76 P.2d 389. The *Texas Co.* case is not dispositive because its holding rested, at least in part, upon the fact casual sales were not subject to sales taxation as they are now. It is clear a transfer from Waterford to itself and the joint interest owners is exempted from sales tax by 68 O.S.1981 § 1360(B). See also Oklahoma Sales Tax Rules, Regulation 13–50 (effective May 19, 1986). However, when the joint interest owners were credited with value upon the transfer of the materials solely to Waterford, no such exemption applies because, under § 1360(B), there was no joint ownership after the transfer.

■ More troubling, though, is the Commission's attempt to force Waterford to collect and remit the sales tax due. Although the consumer in a sale is to pay a

tax, the responsibility for collecting and remitting the sales tax is placed on the vendor under 68 O.S.Supp.1986 § 1361. Waterford claims it was not a vendor within the meaning of 68 O.S.1981 § 1352(R). As a non-vendor, Waterford argues, it is the wrong party to be charged for the sales taxes on these transfers, and the imposition of the assessment exceeds the authority of the Commission.

Waterford was not a vendor. To the extent it had a prior interest in any material transferred to itself, no sale occurred. As to the materials from joint interest owners, Waterford was the vendee. The joint owners were the vendors statutorily charged with the duty to collect and remit any applicable sales tax.

Although concluding Waterford was not a "vendor", the Commission's order reasons that Waterford, as operator, was in a better position to collect sales taxes from the joint owners and is therefore the proper party for assessment. The Commission cites no authority in effect at the time of these material transfers which required Waterford to collect and remit sales tax under these circumstances.[2]

However, the Commission argues a section in Waterford's American Association of Petroleum Landmen (AAPL) model form operating agreements entitled "Taxes" imposed a duty on Waterford to remit the taxes. The AAPL form operating agreement text, by its terms, applied to ad valorem taxes and allowed Waterford to bill the joint owners for the taxes and, at its discretion, pay the taxes under protest and prosecute. the protest to final determination if Waterford considered the assessments improper.

Likewise, nothing in the Counsel of Petroleum Accounting Societies (COPAS) Accounting Procedure Joint Operations form agreement appended and made a part of the operating agreement required Waterford to remit taxes. The COPAS form provisions allowed any taxes which Water-

---

2. The Commission cites Oklahoma Tax Commission Rule 13.017.11 which imposes the duty to collect and remit taxes on material transfers upon oil and gas operators. This new rule was not effective until March 10, 1989, after the transactions at issue. Accordingly, its validity, which may be questionable under our present statutes, is not before us.

ford paid to be a direct charge against a joint account. The COPAS form provisions also allowed Waterford to recoup what it paid. Nowhere did the COPAS form require Waterford to pay the taxes.

 The labels used in describing the parties' legal relations are not controlling, and we will look to the intent and effect of contractual language in conjunction with the parties' actual conduct to determine their amenability to taxation. *Enterprise Management Consultants, Inc. v. State ex rel. Tax Commission,* 768 P.2d 359 (Okla.1988). On this record, if Waterford pays taxes under the operating agreements as an operator, it is merely acting as an agent for the principals owing the taxes. Further, any breach of the agreements would create a right of action between the agreeing parties, not Waterford and the Commission. The private agreement between Waterford and the joint owners did not alter the burden statutorily imposed on vendors to remit taxes. The Commission exceeded its authority in assessing against Waterford sales tax liability attributable to the sales of the joint owners' interests.

## CONCLUSION

Waterford was legally obligated for sales tax on the sale of the pipeline, and we affirm the Commission's order denying Waterford's protest of the pipeline assessment. However, the Commission had no legal authority to assess sales tax against Waterford for the material transfers. We reverse the Commission's order denying Waterford's protest of the material transfer assessment and remand this case for refund under 68 O.S.1991 § 225.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

GARRETT, P.J., and BAILEY, J., concur.