## UNITED STATES v. ROBERTS.
### Cr. No. 15020.

United States District Court
E. D. Tennessee, N. D.
June 6, 1950.

Otto T. Ault, U. S. Atty., Chattanooga, Tenn., James M. Meek, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

John H. Doughty (of Hodges & Doughty), Knoxville, Tenn., for defendant.

## ROBERT L. TAYLOR, District Judge.

Presently the case is before the Court on motion to suppress evidence obtained by search of an automobile without a search warrant. Defendant is under indictment on the two counts of possessing and concealing tax-unpaid whiskey.

On or about April 8, 1950, Herman O. Bomar, Jr., an agent of the Alcohol Tax Unit, received at his home a telephone call from an informer, who advised him that a person, whose name the informer did not give, would make a delivery of whiskey at the house of Mattie Wright and that he believed the whiskey was then on the way there. This call occurred about 1:30 or 1:45 o'clock in the afternoon. Bomar immediately telephoned another agent of the Alcohol Tax Unit, who came by in an automobile within a few minutes, and within thirty minutes from the time of the first telephone call the two officers were in the vicinity of the Wright place.

While they waited there, a city policeman came to the Wright place in answer to a disturbance call. Bomar, who testified that he supposed the police officer had received the same information he had received as to the whiskey delivery, got out of his automobile and conferred with the officer. He was informed by this officer that the latter had information from an informer that bootleg whiskey was being delivered at the Wright place every day, and that the delivery was being made at exactly 2:30 p. m., a time when a shift in police patrols was being made. The police officer also advised Bomar that the person who made the daily delivery was the defendant Roberts.

Bomar and the other agent, who had been seen by persons within the Wright place, continued to watch the house and the adjacent streets. At exactly 2:30 p. m. the defendant appeared in a Ford coupe. He stopped, or slowed almost to a stop, in front of the Wright place, whereupon a man rushed from the house to the car, spoke hurriedly to defendant and waved him on. Defendant spun his rear wheels into a hurried take-off, and Bomar and his companion gave pursuit. A chase took place, extending through the city of Knoxville and into the country, a distance of twenty to thirty miles, with a speed at times that neared one hundred miles per hour, and ending when the Bomar car crashed into that of defendant.

Bomar's first informant had told him that a person was going to deliver three gallons of whiskey in one-half gallon jars. He did not describe the person or the automobile in which delivery was to be made, but he called from the south side of the river, the side on which defendant worked in a garage. Bomar had known defendant by sight for about a year and by reputation for three or four years. He knew that defendant had the reputation of being a bootlegger. He was informed by the city police officer that Mattie Wright's place was a bootlegging house and that it was defendant who serviced the place. The police officer testified that he told Bomar of his information as to defendant's daily visits to deliver whiskey, but he could not recall telling Bomar of having had information that a delivery would be made by defendant on that particular day. Bomar testified that the officer said there would be such a delivery.

Defendant testified that he made the stop at the Wright place to inquire whether his brother was there; that he was on his way to another part of the city to pick up a three-gallon keg; that he had no intention of delivering whiskey to Mattie Wright's place, nor any intention of selling what he had in his car, and that he and some other persons were going on a fishing trip. He also testified that he had told no one that he was going to deliver whiskey, the inference to be drawn therefrom, presumably, being that Bomar could not have been informed that he was going

to deliver whiskey since the defendant himself had not so informed any one.

The Court is of the opinion that the Government agents had probable cause for searching the automobile of defendant, and that the search was legal, though made without a search warrant. When the automobile was overtaken, it was found to contain in the trunk five one-half gallon jars of whiskey, bearing no stamps. A sixth jar was broken, and spilled whiskey was running on the floor of the trunk and dripping onto the ground. It has been held that a search, illegal in its inception, is not made legal by what it turns up. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951. But when the searching officer finds the exact quantity of contraband which one informant said was going to be delivered and finds it in the automobile of the named person who a police officer said was going to deliver it, the outcome is of some significance as to the existence of probable cause. It tends to show that the informers were dependable and, though it does so with the infirmity of being retrospective, it provides some indication of why the officers, both city and federal, relied on them as informers.

Probable cause necessarily is often based upon what an officer is told, as well as upon what he perceives through his own senses. It exists where facts and circumstances within an officer's knowledge, and of which he had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790.

The argument of counsel for defendant that the advanced information possessed by the Government agents would not have justified issuance of a search warrant, gives insufficient weight to subsequent events. The search was not based solely on the advanced information, but upon that and the additional information obtained by the officers prior to the search. The defendant appeared at the time and at the place when and where the officers were informed he would appear. He was a person with a bootlegger's reputation, arriving according to a daily schedule at a place notorious as a bootlegging establishment. The officers had a choice of inferring that he was there either for a lawful purpose or for an unlawful purpose. Ample cause existed for the inference that he had come for an unlawful purpose. If there was still reason for doubt, it ceased to exist when defendant, in response to warning from the man at the Wright house, commenced a precipitate flight. Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407; Talley v. United States, 5 Cir., 159 F.2d 703.

As to the further contention of defendant that the officers had plenty of time to obtain a search warrant and hence should have obtained one, there is lacking adequate support in both fact and law. The proof shows that the officers had only a few minutes between the time the "person" of the first informant had been identified as the defendant by the second informant, and the arrival of the defendant at the Wright place. Moreover, the "ample time" doctrine has been applied particularly to contraband in place, not to contraband in motion. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280. There is doubt whether it now is entitled to any recognition, the test being not whether it was practicable to procure a search warrant, but whether the search itself was reasonable, and the search without a warrant was reasonable if probable cause therefor existed. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430.

Without summarizing the facts detailed hereinabove, the Court holds that the search here was not illegal in its inception and was not made illegal by anything that happened during its consummation. The motion to suppress the evidence obtained by the search should, therefore, be overruled.

Let an order be prepared accordingly.