Richard Eugene DODSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–579.

Court of Criminal Appeals of Oklahoma.

April 6, 1977.

Richard A. Hoffman, Public Defender, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., John J. Powers, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Richard Eugene Dodson, hereinafter referred to as defendant, was charged and tried in the District Court Tulsa County with the offenses of Murder in the First Degree in violation of 21 O.S. Supp.1973, § 701.1, and Shooting With Intent to Kill, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 652, and Robbery With Firearms, After Former Conviction of a Felony, in violation of 21 O.S.Supp.1973, § 801. He was acquitted of Murder in the First Degree, Case No. CRF–75–2181, and convicted and sentenced to One Hundred Ninety Nine (199) years for Shooting With Intent to Kill, After Former Conviction of a Felony, Case No. CRF–75–2182, and Fifty (50) years for Robbery With Firearms, After Former Conviction of a Felony, Case No. CRF–75–2183, and from said judgments and sentences, a timely appeal has been perfected to this Court.

At the trials, which were consolidated by agreement, Ina Louise Morris testified that on September 15, 1975, she was employed at the U–Tote–M Store at 5950 South 33rd West Avenue in Tulsa. At approximately 10:50 p. m. she and the night manager, Clayton Chandler, started making preparations to close the store. She was in the back of the store stocking the pop cooler when she observed a person, whom she identified in Court as the defendant, looking at her. The defendant pointed a pistol at her and ordered her to get down on her knees. She replied "you've got to be kidding," whereupon the defendant shot her in the right shoulder. The defendant closed the cooler door and told her if she looked up

he would kill her. After several minutes, she raised her head and defendant started firing the pistol at her. Her body went numb and she lost consciousness. When she awakened she left the cooler and found Mr. Chandler lying on the floor. The safe and cash drawer were open. She was subsequently transported to St. Francis Hospital where she remained three days. She had wounds in her shoulder, head, face and neck.

Officer R. D. Morris, testified that on September 15, 1975, at approximately 10:55 p. m., he responded to an armed robbery call at the U–Tote–M Store at 5950 South 33rd West Avenue. He observed his wife, Ina, sitting in a chair with blood about her person. He checked Clayton Chandler and could not find any life signs.

The parties stipulated that if Dr. Lee Beamer were called to testify that he would testify that he performed an autopsy upon Clayton Chandler. In his opinion the cause of death of Mr. Chandler was multiple gunshot wounds of the thorax, abdomen and extremities.

Detective Charles Jordan testified that he arrived at the U–Tote–M Store at approximately 11:13 p. m. He assisted in the investigation and found several shell casings near the counter area of the store. He further identified numerous lead fragments and several slugs which were recovered from the scene.

An in camera hearing was held on motions of defendant and co-defendant, Michael Bascum Selsor, to suppress their alleged confessions. At the conclusion of the hearing the trial court ruled that the statements were voluntarily given and overruled the motions.

John James Evans testified that he was employed as a major Crime Investigator for the Santa Barbara, California Police Department. He was present on September 22, 1975, when defendant and co-defendant Selsor were arrested in a beach parking lot in Santa Barbara. He subsequently interrogated both defendants in the presence of Sgt. Williams. Each was advised of his *Miranda* rights and affirmatively acknowl-

edged the waiver of the same. The defendant stated that he was with co-defendant Selsor on the evening of September 15, 1975. They passed by a U–Tote–M Store and noticed that traffic was light in the area. They were both armed and had a conversation concerning robbing the store. Prior to entering the store, defendant Selsor stated that they should kill the employees. He went to the back of the store and told the female employee to be still and lie down. She laughed at him and he fired a warning shot in her direction. He heard co-defendant Selsor tell the elderly gentleman by the cash register that this was a robbery. He next heard several shots coming from the area of the cash register. He stepped back and fired four or five shots through the glass window toward the female employee.

Defendant Selsor's statement was similar. He too, stated that they did not intend to have any witnesses around and planned on killing the employees after the robbery. He shot the elderly gentleman and defendant Dodson shot the female. Defendant Selsor stated that they only got $500.00 from the store.

Officer Evans identified State's Exhibit No. 17, as a .22 caliber pistol which was recovered from under the seat of defendant Selsor's automobile in Santa Barbara. The witness subsequently released the pistol to Officer D. A. Roberts, of the Tulsa Police Department.

On cross-examination, the witness testified that Dodson stated that after he heard shots he "freaked out" and fired toward the girl. The witness further stated that Dodson said that he did not intend to hit her.

D. A. Roberts testified that he was employed as a Homicide Investigator for the City of Tulsa. He went to Santa Barbara to pick up Dodson and Selsor and return them for trial. Both defendants were dressed in only bermuda shorts and so the witness went to the Santa Barbara Police automobile storage garage, where defendant's car was stored, in order to locate proper clothing for them to wear on their

return trip. While getting the clothing from defendant Selsor's automobile, the witness recovered three live .22 caliber cartridges, identified as State's Exhibit No. 18. On the way back to Oklahoma, the witness advised both Dodson and Selsor of their *Miranda* rights. Dodson stated that he wanted to talk to the witness when they got back to Tulsa. The witness visited defendant Dodson in the Tulsa County Jail on September 30, 1975, and again advised him of his constitutional rights. Dodson stated that defendant Selsor had said prior to the robbery that "we're going to take out the witnesses," and that when he heard Selsor fire shots he commenced firing because he had to hold up his end of the bargain.

Tom Lewallen testified that he was the senior investigator in charge of the identification section of the Police Laboratory. He conducted certain tests on State's Exhibit No. 17, the .22 caliber revolver, and on the various projectiles and casings found at the scene, as well as the live shells recovered from the automobile in California.

The State then rested.

For the defense, Dr. Rustico Dizon Garcia testified that he was the chief forensic psychiatrist at the Eastern State Hospital in Vinita. Defendant was admitted to the hospital for observation and examination. He further stated that based upon the examination he was of the opinion that the defendant was not psychotic or legally insane. The defendant had told him that on September 15, 1975, he had consumed alcoholic beverages and used "a gob of speed." The witness further testified that an evidentiary hearing, was held outside the presence of the jury, that he did not have an opinion as to whether defendant was psychotic on the day which the crime was committed. The testimony of Dr. Garcia was subsequently suppressed.

In his first assignment of error, defendant Dodson asserts that his rights were prejudiced when the trial judge required both him and co-defendant Selsor to be

represented by the same counsel.[1] The assertion was made just prior to trial that Dodson was going to plead not guilty by reason of insanity, and Selsor was pleading simply not guilty; and that these were inconsistent defenses in that Dodson would have to admit his complicity while Selsor would seek to deny his own. Therefore, it is contended that counsel for both defendants were put in the ethically untenable position of having to decide which defendant he wished to defend with the most zeal. That is, if counsel elected to put Dodson on the stand in an attempt to establish insanity, then Selsor would necessarily be implicated by Dodson's testimony; and that if counsel did not put Dodson on from fear of implicating Selsor, then Dodson would be denied his right to present his own defense.

■ Assuming for the sake of argument that this theory is correct, nevertheless we are constrained to find defendant's assignment of error to be without merit. This is so, because defendant Dodson wholly failed to produce at trial any evidence which would lend credence to his defense of insanity. The only witness which defendant produced on this issue, Dr. Garcia, stated in response to questioning that he had no opinion as to defendant's psychological condition at the time the offense occurred. Due to the paucity of evidence on this matter, no instruction regarding insanity was requested or given. In light of this we hold that even if we assume it was error for the trial judge to refuse to appoint outside counsel, which issue we do not reach herein, such error was harmless, and we cannot reverse on this account. See, 20 O.S.1971, § 3001, Harmless Error.

■ The defendant's second assignment of error is that the trial court erred by suppressing the testimony of Dr. Garcia, regarding the defendant's mental condition. We again, must disagree. As discussed in the first assignment of error, Dr. Garcia testified in the evidentiary hearing that he

---

1. It is to be noted that each defendant herein was appointed counsel from the Tulsa County Public Defender's Office, and that it was appar-

ently the decision of the two counsels so appointed to collaborate on this case.

had no opinion with medical certainty as to defendant's competency on September 15, 1975. He further testified that any opinion he might make would simply be a guess. We therefore agree with the trial court's finding, that because the doctor had no opinion as to the defendant's competency on the evening in question, that any further testimony along those lines would have no value for the jury. In *Pruitt v. State*, Okl.Cr., 290 P.2d 424 (1955) we stated:

"The general rule is that the question of competency of a witness to testify as an expert is largely a matter of discretion for the trial court and it requires a clear proof of error to warrant a reversal by the appellate court on such matters."

▮ The defendant asserts in his third assignment of error that the trial court erred by admitting his confession to Officer John Evans into evidence. Officer Evans testified that the *Miranda* rights were given to defendant by Sgt. Williams in his presence. The defendant argues that because the rights were not given by the officer who testified as to the confession, that he was denied his right of cross-examination. We cannot agree with the defendant's assertion. The record reflects that the defendant extensively cross-examined Officer Evans as to the circumstances concerning the confession. The evidence is uncontradicted that the defendant was properly advised of his *Miranda* rights and voluntarily made a statement to the officer. We are of the opinion that such a confession should not be inadmissible simply because the *Miranda* rights were not given by the officer who testified as to the confession. In 23 C.J.S. Criminal Law § 836 at page 250 it is stated:

"Proof of compliance with the statutory requirements relating to confessions may be made by the person to whom the confession was made; the subscribing witnesses are not the only persons who may be called on to make such proof. So, although the warning given accused before he makes a confession is usually proved by the party giving it, proof thereof may be made by any witness who was present and heard it."

▮ The defendant's fourth contention is that the trial court erred by admitting into evidence State's Exhibit No. 7, a photograph of the body of Clayton Chandler. We have previously held that the introduction of photographs in homicide cases is largely within the discretion of the trial court and that if the evidence has probative value which outweighs the danger of prejudice to the defendant, the evidence is admissible. See, *Jones v. State*, Okl.Cr., 542 P.2d 1316 (1975). We have carefully examined the exhibit and observe that it is an 8" × 10" black and white photograph which depicts the body lying near an open safe. The photograph is not of a gruesome or grotesque nature. It was admitted with the stated purpose of showing the position of the body. We thus conclude that the trial court did not abuse its discretion in allowing the introduction of the exhibit.

▮ The defendant contends in his fifth assignment of error that the trial court erred by allowing the State to introduce into evidence State's Exhibit No. 14, the lead particles found in the back area of the store. The defendant argues that Officer Tom Lewallen was not qualified as an expert nor did he testify as to what factors led him to believe that the lead particles were actually expended bullets. We must disagree with both contentions. The record reflects that after testifying as to his qualifications as to educational background and work experience the following question was propounded by the prosecuting attorney:

"Q. Will you tell this Court and jury have you ever had an occasion to be qualified as an expert in firearms identification in the past in other courts?

"A. Yes sir. I have offered expert testimony in Tulsa County Courts, Osage County Courts, and Oklahoma County Courts.

"MR. SHAFFER: We would offer Officer Lewallen, Your Honor, as an expert in the field of firearms examination based on his experience as related by the Court.

"BY THE COURT: You may proceed." (Tr. 372).

The witness thereafter testified as to the test he performed on the lead projectiles and his conclusions therefrom, without objection by the defendant. We therefore find this assignment of error to be without merit. See, *Pruitt v. State,* supra, and *Box v. State,* Okl.Cr., 541 P.2d 262 (1975).

■ Defendant's sixth assignment of error contains two propositions, both of which concern the searches of defendant's car in California. In the first proposition it is contended that the search of the vehicle on the beach immediately subsequent to the defendant's arrest, and the seizure of the nine shot revolver therefrom, was illegal as an unreasonable search and seizure, and that therefore this evidence should have been suppressed. This argument is without merit. The automobile was on a crowded public beach with many children about. The officers had information from a hitchhiker, whom defendants had given a ride, that there was a gun in the car. Additionally, the officers did not know if defendants had an accomplice lurking about. The trial court held that these circumstances were sufficiently exigent to justify a warrantless intrusion. We agree. In *Johnson v. State,* Okl.Cr., 554 P.2d 51, 54 (1976), we stated:

" 'It is argued that the searching officers had time and opportunity to procure a search warrant prior to the search, and for this reason the search in question was illegal. It has been decided that this naked fact alone does not render the search of an automobile illegal.' *Jenkins v. State,* 116 Tex.Cr. 374, 32 S.W.2d 848 (1930). See also, *United States v. Roberts,* D.C., 90 F.Supp. 718 (1950). Therefore, the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. One of the exceptions to the general search warrant rule is the situation where exigent circumstances or a state of exigency exists. . . . " (Citations omitted).

Defendant's first proposition is without merit.

■ In his second proposition, defendant asserts that the second search of defendant's car by Tulsa Officer D. A. Roberts while the car was impounded in the Santa Barbara Police Garage was illegal. The justification for this search was that it was made for the sole purpose of obtaining clothes for the defendants to wear on the return trip to Tulsa. Several live .22 caliber cartridges were recovered, and it was shown at trial that certain marks or scratches on these shells were identical to certain scratches or marks found on expended .22 caliber shells which were recovered from the scene of the crime. The trial court ruled that Officer Roberts' actions in searching the car for clothing for the defendants were reasonable, and that the officer thus had a right to be where he was when the recovered shells came into "plain view."

We find that this second search of defendant's vehicle was made without a warrant and without defendant's consent, and was thus illegal. While it is true that there may have existed probable cause for the search of the vehicle, it is also true that at the time the second search occurred there existed no exigent circumstances justifying a warrantless intrusion. The car was impounded and secured in the police garage. If it be true that the officers only intended to secure clothing for the defendant and co-defendants, and we have no reason to doubt this, then, at the very least, consent of defendant and co-defendants should have been obtained. However, we are of the opinion that the erroneous admission of these shells was harmless error. The evidence of defendant's guilt was overwhelming, and included eye-witness identification as well as a confession. The erroneous admission of these shells caused no substantial prejudice to defendant's rights, and his sixth assignment of error is therefore without merit. See, 20 O.S.1971, § 3001.

■ The defendant's seventh contention is that the prosecuting attorney engaged in activities throughout the course of the proceedings that were so prejudicial that the defendant was denied his constitutional right to a fair and impartial trial. We have carefully examined the record and find that

the same does not support defendant's contentions. To the contrary, the record clearly reflects that the conduct of the prosecuting attorneys were well within the guidelines set out by the American Bar Association and approved by this Court in *Dupree v. State*, Okl.Cr., 514 P.2d 425 (1973).

 The defendant finally contends that the punishment is excessive. We have repeatedly stated that the question of excessiveness of punishment is determined by a study of all the facts and circumstances surrounding each individual case and that this Court does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. *Gardner v. State*, Okl.Cr., 532 P.2d 1200 (1975). Considering the overwhelming evidence of the defendant's guilt, the nature and consequences of the offenses we cannot conscientiously say that the sentences assessed shocks the conscience of this Court.

The judgments and sentences are accordingly *AFFIRMED.*

BLISS, J., concurs.

BRETT, J., specially concurs.

BRETT, Judge, specially concurring:

I concur these convictions that were consolidated for trial should be affirmed, but I would modify the sentence to life imprisonment for the offense of Shooting With Intent to Kill, After Former Conviction of a Felony; and would affirm the fifty (50) year sentence for the offense of Armed Robbery, After Former Conviction of a Felony.

I am authorized by my colleague, Presiding Judge Bussey, to comment on our views regarding the joinder of offenses and of defendants in the information, or of the joinder of informations for trial.

 After reviewing the provisions of H.B. 988, Ch. 311 of the 1968 Session Laws for the 31st Legislature, Second Session, now cited as 22 O.S.1971, §§ 436–440, there is no doubt in my mind but that it was the intention of the legislature to authorize the joinder of two or more defendants in the same indictment or information; to authorize the joinder of counts in the same indictment or information; and to authorize the joinder for trial of two or more indictments or informations, or both. This authority is subject to limitations appearing within H.B. 988 which Act because of such limitation must be reviewed in its entirety to give meaning to each Section of the Act consistent with the whole Act and the Title thereto. For this reason the entire Act as it appears in the 1968 Sessions Laws, pages 494 and 495, is set out as follows:

"CRIMINAL PROCEDURE—INDICTMENTS AND INFORMATIONS—JOINDERS

"CHAPTER 311

"H.B. NO. 988

"AN ACT RELATING TO CRIMINAL PROCEDURE; PROVIDING FOR JOINDER OF OFFENSES AND OF DEFENDANTS IN INDICTMENTS AND INFORMATIONS; PROVIDING FOR THE TRIAL TOGETHER OF INDICTMENTS AND/OR INFORMATIONS; PROVIDING FOR RELIEF FROM PREJUDICIAL JOINDER; AND REPEALING CONFLICTING LAWS.

*"Be it enacted by the People of the State of Oklahoma:*

"SECTION 1. Charging of two or more defendants in same indictment or information—Counts

"Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately, provided that all of the defendants charged together in the same indictment or information are alleged to have participated in all of the same acts or transactions charged.

"SECTION 2. Singular to include the plural

"All laws in this chapter wherein the singular of words is used are hereby amended to include the plural of such words to give effect to the purpose of this Act.

"SECTION 3. Trial of two or more indictments or informations

"The court may order two or more indictments or informations or both to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution was under such single indictment or information.

"SECTION 4. Relief from prejudicial joinder

"If it appears that a defendant or the State is prejudiced by joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide whatever other relief justice requires.

"SECTION 5. Repeal of conflicting laws

"All laws or parts of laws in conflict herewith are hereby repealed.

"Approved May 7, 1968."

One must first view the title of an act to determine if the subject covered is clearly expressed, Art. 5, Oklahoma Constitution 1971, § 57, and " . . . a consideration of the title to the Act may be enlightening, because the body of an Act cannot be broader than the title." *Brown v. State*, Okl.Cr., 266 P.2d 988, 990 (1954); see also, *Oklahoma City v. Prieto*, Okl., 482 P.2d 919 (1971); and further, " 'the title [is] a very valuable aid in interpreting the body of the Act and determining the intent of the legislature.' " *Brown v. State, supra*, 990. The title of H.B. 988 provides for the joinder of offenses (counts) in indictments or informations; the joinder of defendants in indictments or informations; the trial together of indictments, of informations, or of indictments and informations; the relief

from prejudicial joinder; and, the repeal of conflicting laws.

With the title provisions in mind I now turn to a discussion of each section of H.B. 988.

Section one (now 22 O.S.1971, § 436) clearly permits the charging of two or more defendants in the same indictment or information, which is consistent with the joinder of defendants provided in the title; however, it limits such joinder to those defendants who are alleged to have committed the same offense or offenses.

Section one, also clearly permits the charging of two or more defendants with one or more counts in the same indictment or information, which is consistent with the joinder of offenses (counts) provided in the title; likewise, it here permits the joinder of offenses only if all the defendants, who are charged in the same indictment or information, are alleged to have participated in all the offenses charged.[1]

Section one, though less clearly, further permits the charging of one defendant with one or more offenses (counts) in the same indictment or information, which is likewise consistent with the joinder of offenses (counts) provided in the title. In construing Section one to permit one defendant to be charged by counts in the same indictment or information one must look closely to the second sentence which reads in pertinent part: "Such *defendants* may be charged in one or more counts *together or separately* . . . .." (Emphasis added) In *State v. Freeman*, Okl., 440 P.2d 744, 756 (1968), the Court, quoting from *Oklahoma Natural Gas Co. v. State*, 187 Okl. 164, 101 P.2d 793 (1940), stated as follows:

" 'It is a familiar rule of constitutional and statutory construction that sections are to be construed so as to give effect to every part thereof, that each provision of a section should be construed so as to harmonize with all the others, yet with a view to giving effect to each and every

---

1. The combined effect of these limitations is to prohibit the charging of more than one defendant in the same indictment or information unless they are all alleged to have committed all the offenses or counts charged in the same indictment or information.

provision insofar as it shall be consistent with a construction of the section as a whole; the presumption being that every provision has been intended for some useful purpose. * * * ' "

In the second sentence of Section one, although the phrase "together or separately" appears immediately after the word "counts," "together or separately" would have *no effect* and have *no useful purpose* if construed to refer to and modify "counts"; this is so because the word "counts" is already preceded by "one or more" and it would be redundant to say "one or more" "together or separately." However, if "together or separately" is construed to refer to and modify the word "defendants" so that it reads " . . . defendants may be charged" "together or separately" "in one or more counts" all the provisions of the second sentence would be effective and serve a useful purpose. Furthermore, such a construction would be giving effect to Section one of H.B. 988 in a manner consistent with Sections three and four of the Act (now 22 O.S.1971, §§ 438 and 439); in fact, it gives meaning to the provision in Section three which reads " . . . if the *offenses* and the defendants, if there is more than one, *could have been joined in a single indictment or information*," (emphasis added) which would have no useful purpose or meaning within the context of the Act as a whole, unless offenses could be joined in the same indictment or information; and it gives meaning to Section four which enables relief from prejudicial joinder of offenses (counts) in an indictment or information, which provision clearly would serve no useful purpose unless joinder of offenses in the same indict-

ment or information were possible in the first place.

Section two (now 22 O.S.1971, § 437) is self-explanatory.

Section three (now 22 O.S.1971, § 438) permits the court to join two or more indictments or informations, or indictments and informations for trial, which is consistent with the joinder of indictments and informations, or both for trial as provided in the title; however, it limits such joinder for trial to offenses and defendants, if there is more than one, that could have been joined in the same indictment or information within the limitations set out in Section one of the Act.

Section four (now 22 O.S.1971, § 439) permits relief on motion of either the defendant or the State if the joinder of offenses in the same indictment or information, the joinder of defendants in the same indictment or information, or the joinder of indictments or informations, or indictments and informations for trial is prejudicial which is consistent with the relief from prejudicial joinder as provided in the title.

Section five (now 22 O.S.1971, § 440) states: "All laws or parts of laws in conflict herewith are hereby repealed." Without further discussion it is noted that 22 O.S.1971, § 404, which was in existence when H.B. 988 was enacted is in conflict with H.B. 988 insofar as it states that an " . . . indictment or information must charge but one offense," and I would hold that part of 22 O.S.1971, § 404, was repealed by Section five of H.B. 988.

If the above procedure were followed it would operate to reduce the number of trials [2] and the attendant expenses to the

---

2. " ' . . . an indictment in several counts, . . . is a collection of several bills against the same defendant for offenses which on their face appear distinct, under one caption, and found and indorsed collectively as true by the grand jury. *The object is what it appears to be; namely, in fact to charge the defendant with the distinct offenses, under the idea that the court may, as often as it will, allow them to be tried together, thus averting from both parties the burden of two or more trials*; [in Oklahoma, authorized by 22 O.S.1971, §§ 436–440] or, in another class of cases, to vary what is meant to be the one accusation, so as, at the

trial, to avoid an acquittal by any unforeseen lack of harmony between allegation and proofs, or a legal doubt as to what form of charge the court will approve.' [In Oklahoma, authorized by 22 O.S.1971, § 404] 1 Bish.Crim.Proc. 421, 422. And: 'On the face of the indictment, therefore, every separate count should charge the defendant as if he had committed a distinct offense, because it is on the principle of joinder of offenses that the joinder of counts is admitted.' Id. 426." (Emphasis added) *Boren v. State*, 23 Tex.App. 28, 4 S.W. 463, 464 (1887). Reversed on other grounds.

State and the defendant while at the same time give either relief from prejudicial joinder by review of the trial court.