**Acil Eugene (Bimbo) BRADFIELD, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. O-80-525.**

Court of Criminal Appeals of Oklahoma.

July 14, 1982.

Mark Barrett, Asst. Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Acil Eugene (Bimbo) Bradfield, pled guilty to the crime of Robbery by Force, in the District Court of Creek County, Case No. CRF–76–71, and on September 28, 1976, was sentenced to five (5) years' imprisonment, four of which were suspended. While serving the suspended sentence, the appellant was charged with

Burglary of an Automobile, in the District Court of Creek County, Case No. CRF–79–168, and an application to revoke his suspended sentence was filed November 14, 1979. He now appeals the February 4, 1980, order revoking the suspended sentence.

During the early morning hours of August 8, 1979, Mrs. Geraldine Sissons was alerted by her barking dog to a disturbance outside her home in Oakhurst, Oklahoma, and she saw someone running across the road and to the corner of the empty lot to the east of her home. She found the appellant sitting against the fence on her property and returned to awaken her husband, who accompanied her outside, carrying his rifle. After a confrontation between the appellant and the Sissons, Mrs. Sissons carried the rifle back into the house and called the sheriff. Deputy O'Neill arrested the appellant at the scene and seized a red tool box, identified by the Sissons as the one the appellant was carrying with him.

The next morning, Michael Counts, who lived across the street from the Sissons, reported that the right front window of his 1972 Ford had been broken during the night and that his red tool box had been removed from his car. At the revocation hearing, Counts identified the tool box recovered from the appellant as his.

The three allegations of error raised on appeal include illegal seizure of evidence, improper denial of the preliminary hearing transcript, and a failure by the State to initiate timely revocation proceedings.

In the initial proposition, the appellant asserts that, absent the illegally obtained evidence, there was insufficient evidence to establish the burglary, which was the basis of his revocation. The allegedly tainted evidence consisted primarily of inculpatory statements made by the appellant and all evidence derived from the seizure of the tool box. Three theories are relied upon: first, that the evidence was the result of illegal arrests by both Sissons and Officer O'Neill; second, that the appellant's statements were involuntary and obtained in violation of his *Miranda* rights; and third, that Deputy O'Neill lacked the probable cause to search and seize evidence from the appellant.

The facts indicate that the appellant was merely detained by the Sissons pending arrival of law enforcement officers upon their apprehension of him on their property during the early morning hours. During this initial confrontation, the appellant volunteered that he had taken the tools. The facts do not support the allegation that the Sissons even arrested the appellant, much less that the arrest was illegal. Whether or not the arrest by Officer O'Neill was valid depends upon the existence of probable cause to believe that the appellant had committed a felony. *Tittle v. State*, 539 P.2d 422 (Okl.Cr.1975). That probable cause must consist of reasonably trustworthy knowledge of facts and circumstances, at the moment of arrest, sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense. *Swain v. State*, 621 P.2d 1181 (Okl.Cr.1980).

In the instant case, Deputy O'Neill was called to the Sissons' residence in the middle of the night in an area that had experienced recent robberies. When O'Neill arrived at the scene he observed the appellant in an intoxicated state on the Sissons' property. O'Neill learned from the Sissons that they had seen the appellant running through their yard with the tool box in his hand. He also recognized the appellant from previous dealings, and, when asked about his presence at such a late hour, the appellant stated that he was just running around the streets. All of these factors, when taken together, persuade this Court that Deputy O'Neill possessed probable cause to arrest the defendant. Having established the validity of the arrest, the tool box in the appellant's possession was lawfully seized incident to that arrest and was therefore admissible. *U. S. v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Mason v. State*, 603 P.2d 1146 (Okl.Cr.App.1979).

■ The remaining contention under the first proposition needs not be determined because whether or not the appellant knowingly waived his rights prior to making inculpatory statements to Officer O'Neill, excluding those statements, the evidence was sufficient for the trial judge to find that the burglary had been committed.

In his second assignment of error, the appellant argues that he was denied a transcript of his preliminary hearing and that the denial was in violation of his federal due process rights and in contravention of Oklahoma law. At the final hearing on the revocation, the defense attorney sought a continuance for failure of the court reporter to prepare the requested preliminary hearing transcript. The trial court apparently denied the motion based upon the fact that the same attorney represented the appellant at both the preliminary and final hearings.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court found that the potential loss of liberty in a parole revocation hearing required that a parolee be afforded due process, and the Court established minimum requirements, including preliminary and final revocation hearings. The following Term, the *Morrissey* requirements were applied to probation revocations. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The requirements in the second stage hearing on a revocation were established in *Morrissey* as follows:

(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied

on and reasons for revoking [probation or] parole. 408 U.S. 471 at 489, 92 S.Ct. 2593 at 2604, 33 L.Ed.2d 484.

The appellant relies on two of the stated requirements: the right to cross-examination and the right to a written statement.

■ A revocation hearing meets constitutional standards if the proceeding is fundamentally fair. *Degraffenreid v. State*, 599 P.2d 1107 (Okl.Cr.1979). In the instant case the appellant was permitted, through court-appointed counsel, to cross-examine all witnesses, and the fact that he did not receive a transcript of the preliminary hearing did not significantly affect the effectiveness of this cross-examination at the final hearing. The appellant argues that he was prejudiced by the fact that his attorney could not demonstrate various inconsistencies in the testimony from the two hearings. However, the majority of those variances related to the allegedly inadmissible statements of guilt, which have already been dismissed as non-essential to the order of revocation. Further, the same attorney represented the appellant at both hearings and the record indicates that, to a reasonable degree, he was able to cross-examine the witnesses as to their earlier inconsistencies. No significant prejudice attached to the court's failure to grant a continuance for lack of a preliminary hearing transcript.

■ Finally, the appellant's reliance on the written statement requirement in *Morrissey v. Brewer*, supra, is misplaced as this does not refer to the transcript of the preliminary hearing in a revocation. The reference is to the written order revoking the suspended sentence and has no bearing on this issue.

■ The appellant's third proposition concerns the timeliness of the State's prosecution of revocation proceedings under State law and within concepts of due process. The statute governing the procedure provides for a hearing within twenty (20) days of the arrest. 22 O.S.1981, § 991b. The appellant argues that the hearing was held in excess of twenty days after his arrest for the burglary of the automobile. However, this is not the arrest referred to

in the statute. The statute refers to the arrest pursuant to the State's application to revoke, and when measured against this date there is no problem with timeliness. *Wilson v. State*, 621 P.2d 1173 (Okl.Cr.1980).

The appellant also urges that the proceedings violated federal due process, citing *Morrissey* and *Gagnon*, supra, as authority for this allegation. However, the Court in *Morrissey* stated:

> The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable. 408 U.S. 471 at 488, 92 S.Ct. 2593 at 2603, 33 L.Ed.2d 484.

It must also be assumed that the phrase "taken into custody" refers to custody for violation of parole and not to any arrest for conduct which constituted the parole violation. As previously stated, the preliminary revocation hearing was held within twenty days of the arrest. No error occurred.

The order of revocation is hereby affirmed.

CORNISH, J., concurs.

BUSSEY, J., concurs in results.