Gary Eugene JOHNSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-83-495.

Court of Criminal Appeals of Oklahoma.

July 16, 1985.

Rehearing Denied Aug. 7, 1985.

Thomas G. Smith, Jr., Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Deputy Chief, Criminal Division, Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Gary Eugene Johnson, appellant, was charged with, tried for, and convicted of the crime of Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1981, § 1435, Case No. CRF–82–4565, in the District Court of Oklahoma County, Oklahoma. Upon recommendation of the jury, appellant was sentenced to a term of forty years' imprisonment. From this judgment and sentence, appellant has perfected an appeal to this Court.

Briefly, the facts show that on September 12, 1982, Helen Caporal's condominium was burglarized while she was away visiting a friend. At approximately 8:30 p.m. her neighbor, Cheryl McSpadden, spotted a man, later identified as the appellant, standing partially in a broken picture window of Ms. Caporal's residence. On the ground outside the broken window was a television set, a microwave oven and a television cable box. Ms. McSpadden began to scream, causing the defendant to look up and face Ms. McSpadden.

Both Ms. McSpadden and a friend, John Burge, chased the appellant, who was running approximately twenty feet in front of them. Eventually, Ms. McSpadden abandoned pursuit and notified the police. Less than one minute later, Mr. Burge quit chasing him.

Mr. Burge then returned to the condominium complex where Ms. McSpadden was awaiting the police. When the police arrived, the two witnesses each related to the officers a general description of the defendant. The officers then investigated the scene, and conducted a search around the general area.

They spotted an automobile parked next to a convenience store situated adjacent to the condominium complex where both Ms. Caporal and Ms. McSpadden resided. The officers decided to stake out the vehicle since it was parked in a "suspicious" manner. At approximately 10:10 p.m., a man who matched the descriptions given to the officers by Mr. Burge and Ms. McSpadden approached the vehicle and prepared to drive away. When the vehicle backed out of the parking lot, the officers pulled out of hiding and the vehicle abruptly and quickly made a left turn. In so doing, it crossed the center line and traveled on the wrong side of the road "well before" it got to the turn. The man also failed to activate his turn signal.

The officers then stopped the appellant and advised him of the traffic charges. After conducting a pat search, the officers placed the appellant under arrest for the burglary of Ms. Caporal's residence.

The officers and the appellant then returned to Ms. Caporal's residence. During this second investigation, the appellant remained seated in the back seat of the patrol car, and neither Mr. Burge nor Ms. McSpadden saw him. After approximately forty-five minutes, the second investigation was completed and the appellant was taken to the station.

Two days later, a line-up was viewed by Ms. McSpadden and Mr. Burge at the Oklahoma City Police Department. In both instances, each witness identified the appellant as the man they saw previously at the condominium complex.

Appellant's first assignment of error is broken down into three parts. He first contends that the police officers lacked probable cause to make the arrest, and it was therefore illegal. The standard for determining what constitutes probable cause was first enunciated by the United States Supreme Court in *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The standard, which is followed in Oklahoma, is "that probable cause must consist

of reasonable trustworthy knowledge of facts and circumstances, at the moment of arrest, sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense. *Swain v. State*, 621 P.2d 1181 (Okl.Cr.1980)", *Bradfield v. State*, 648 P.2d 1239, 1241 (Okl.Cr.1982).

■ In the case at bar, when the arresting officers were first summoned to the scene of the burglary, they found that the residence had been broken into and several items had been removed to the outside, including a television set and a microwave oven. We hold that this put the officers on notice that the appellant was probably using a vehicle, since he would not have been able to carry away these items on foot.

Since the witnesses indicated that the appellant fled the scene on foot, the officers had reasonable cause to believe that a vehicle would be parked nearby, and that the appellant would eventually return to retrieve the automobile. The officers spotted a vehicle nearby parked in a suspicious manner. A man who matched the descriptions of the burglar given to the officers approached the vehicle, got in, and drove away. When the officers came out of hiding in pursuit of the vehicle, the driver apparently became startled and drove in an unorthodox manner. We hold that these facts, taken as a whole and known to the arresting officers at the time of the stop, were sufficient to warrant a belief that the appellant had committed the offense. Since the arresting officers had probable cause to make the initial stop the subsequent arrest of the appellant was legal. *See Jones v. State*, 555 P.2d 63 (Okl.Cr. 1976).

■ Appellant's next contention, that his pretrial identification by Mr. Burge and Ms. McSpadden at the line up implicating him in the burglary was the result of an illegal arrest and therefore subject to exclusion under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), is therefore moot.

■ Appellant finally contends that the police lineup was improper because it was unduly suggestive, in that the police led the witness to believe that one of the individuals in the lineup had in fact committed the crime. After thoroughly reviewing the entire record, we find no evidence that the lineup was conducted improperly. The lineup was conducted two days after the incident and included participants who were similar in appearance to the appellant. Additionally, both Mr. Burge and Ms. McSpadden testified that they did not see the appellant in the squad car during the officers' second investigation. The contention is therefore without merit.

Appellant's second and fifth assignments of error deal with the adequacy of the jury instructions. In particular, he contends that the trial court committed fundamental error in failing to give a cautionary instruction with regard to the witnesses' identification testimony, and in failing to instruct on his theory of defense. The law regarding the giving of instructions is clear:

> Where counsel is not satisfied with the instructions that are given, or desires the court to give a particular instruction, it is the duty of counsel to prepare and present to the court such desired instructions and request that they be given. In the absence of such a request, we will not reverse the case if the instructions generally cover the subject matter of inquiry and there is no fundamental error. *West v. State*, 617 P.2d 1362 (Okl.Cr. 1980).

*Mitchell v. State*, 659 P.2d 366, 368 (Okl. Cr.1983).

In the case at bar, it should be first noted that counsel for appellant requested a cautionary instruction, but later withdrew his request. Additionally, there is no evidence that counsel either prepared or submitted any instructions to the trial judge.

■ The instructions given the jury, when considered as a whole, were adequate to apprise the jury of the issues in the case. *See Maghe v. State*, 620 P.2d 433 (Okl.Cr. 1980). In particular, Instruction No. 10

directed the jury's attention to the witnesses' "means of observation, and opportunity of knowing the matters about which [they have] testified." Therefore, we find no fundamental error. Appellant's second and fifth assignment of error must fail.

In his third assignment of error, appellant asserts that the trial court committed reversible error by unduly restricting counsel for the appellant from cross-examining a State witness. We disagree.

 It is well settled that the extent of cross-examination rests in the sound discretion of the trial court and its rulings will not be overturned on appeal unless there is a clear abuse of discretion, *Hickerson v. State*, 565 P.2d 684 (Okl.Cr.1977). We find no abuse here. The rulings complained of were based on objections by the State to the form of the question only, and not an attempt to truncate the entire line of questioning. Additionally, the defendant has failed to show any prejudice by the court's sustaining the objections. This assignment of error, therefore, is meritless.

Appellant's fourth assignment of error alleges that he was deprived of a fair and impartial trial by the prosecutor asking questions intended to unduly prejudice the defense. In particular, appellant asserts that it was improper for the State to question Lartharee Johnson, the wife of the appellant and his sole witness, as to the reasons she did not come forward to the police or the district attorney to relate the alibi.

At the outset, asking a witness why he did not come forward sooner is generally improper because it is too ambiguous to be relevant. Such a question may be probative, however, if the State makes a *prima facie* showing as to the time, place, and circumstance of the omission sufficient to warrant an inference that there was an opportunity to disclose and a duty to disclose. *Glover v. State*, 531 P.2d 689, 693 (Okl.Cr.1975) (Brett, J., dissenting).[1]

1. This writer's view on this issue is not shared by the entire Court. *See Black v. State,* 664 P.2d

In the case at bar, however, it is not necessary to follow this test since the appellant failed to object to the line of questioning. *See Odum v. State*, 651 P.2d 703 (Okl.Cr.1982). Furthermore, there was other substantial evidence from which the jury could base its conviction. This contention, therefore, is without merit.

Appellant's sixth and seventh assignments of error assert that, considering all the facts and circumstances surrounding the case, the punishment imposed by the jury should be reduced. After a thorough examination of the record, we conclude that the sentence imposed is not "so excessive as to shock the conscience of the Court," *Dodson v. State*, 562 P.2d 916, 923 (Okl.Cr.1977). We therefore decline to modify the judgment and sentence imposed by the trial court. AFFIRMED.

PARKS, P.J., and BUSSEY, J., concur.

1054, 1058 (Okl.Cr.1983), and *Glover v. State,* 531 P.2d 689.